NONCONFIDENTIAL VERSION

Case No. 2025-2120

**BEFORE THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

AUXIN SOLAR INC., CONCEPT CLEAN ENERGY, INC.,

*Plaintiff-Appellees*

v.

UNITED STATES, DEPARTMENT OF COMMERCE, HOWARD LUTNICK, SECRETARY OF COMMERCE, UNITED STATES CUSTOMS AND BORDER PROTECTION, RODNEY S. SCOTT, COMMISSIONER OF U.S. CUSTOMS AND BORDER PROTECTION,

*Defendants*

AMERICAN CLEAN POWER ASSOCIATION, CANADIAN SOLAR (USA) INC., CANADIAN SOLAR INTERNATIONAL LIMITED, SOLAR ENERGY INDUSTRIES ASSOCIATION, JA SOLAR USA, INC., JA SOLAR VIETNAM COMPANY LTD., JA SOLAR MALAYSIA SDN. BHD., JA SOLAR INTERNATIONAL LTD., NEXTERA ENERGY, INC., BYD (H.K.) CO., LTD., BYD AMERICA LLC, INVENERGY RENEWABLES LLC, INVENERGY SOLAR EQUIPMENT MANAGEMENT LLC, TRINA SOLAR (U.S.) INC., TRINA SOLAR (VIETNAM) SCIENCE & TECHNOLOGY CO., LTD., TRINA SOLAR ENERGY DEVELOPMENT CO. LTD., TRINA SOLAR SCIENCE & TECHNOLOGY (THAILAND) LTD., RISEN SOLAR TECHNOLOGY SDN. BHD., BOVIET SOLAR TECHNOLOGY CO., LTD., BOVIET SOLAR USA, LTD., JINKO SOLAR (U.S.) INDUSTRIES INC., JINKOSOLAR (U.S.) INC., JINKO SOLAR TECHNOLOGY SDN. BHD., JINKO SOLAR (MALAYSIA) SDN. BHD., JINKOSOLAR (VIETNAM) CO., LTD., JINKOSOLAR HOLDING CO., LTD., JINKOSOLAR MIDDLE EAST DMCC, JINKOSOLAR (VIETNAM) INDUSTRIES CO. LTD., JINKOSOLAR INVESTMENT LTD., FKA JINKOSOLAR TECHNOLOGY LTD.,

*Defendants-Appellants.*

2025-2120

Appeal from the United States Court of International Trade in Court No. 23-00274
Judge Timothy M. Reif

PLAINTIFF-APPELLEES' RESPONSE BRIEF

Thomas M. Beline
James E. Ransdell
Roop K. Bhatti
Chase J. Dunn
**CASSIDY LEVY KENT (USA) LLP**
2112 Pennsylvania Ave N.W., Suite 300
Washington, DC 20037
Phone: (202) 567-2300
Fax: (202) 567-2301

*Counsel to Auxin Solar Inc. and Concept Clean Energy, Inc.*

Filed: August 4, 2026
Refiled: August 14, 2026

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2025-2120 |
| **Short Case Caption** | Auxin Solar Inc. v. US |
| **Filing Party/Entity** | Auxin Solar Inc. and Concept Clean Energy Inc. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/1/2025

Signature: /s/ Thomas M. Beline

Name: Thomas M. Beline

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Auxin Solar Inc. | | |
| Concept Clean Energy Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Sydney C. Reed | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## Table of Contents

Page

I. Facts Related to the CIT's Proper Exercise of Jurisdiction ............... 9

II. Facts Related to the Scope of Relief Ordered by the CIT ................. 12

A. Plaintiffs Provided Unchallenged Evidence of Irreparable Harm ........................................................................... 12

B. All Evidence Before the CIT Established that No Entries Qualifying for the Duty Suspension Rule Had Liquidated ........ 14

C. Intervenors Overstate their "Harms" and Omit their Failures to Mitigate ..................................................................... 15

I. Areas of Disagreement Regarding Standards of Review ................. 22

II. Intervenors Lack Independent Standing .......................................... 24

III. The CIT Properly Found Subject Matter Jurisdiction over Plaintiffs' Case ....................................................................... 28

A. This Action's "True Nature" Challenges Duty Administration and Enforcement, Not Commerce's Determinations as to Whether CSPV Products Are Within the Class or Kind of Merchandise Described in PRC AD/CVD Orders ....................................................................... 29

B. Section 1581(c) Jurisdiction Is Strictly Limited and Was Not Available ............................................................... 32

1. The Duty Suspension Rule is Not a Determination Identified by 1516a ........................................................ 32

2. The Duty Suspension Rule Is Not Subsumed into a Determination Reviewable Under Section 1516a ................ 34

C. *Shinyei* and *Ugine II* Confirm that 1581(i) Confers Jurisdiction over Plaintiffs' Enforcement Challenge ................. 37

D. Even Assuming 1581(c) Could Have Applied, Relief Would Have Been Manifestly Inadequate .......... 40

IV. The CIT Correctly Held that the *Duty Suspension Rule* Exceeds Commerce's Authority Under Section 318(a) .......... 43

A. Section 318(a) Delegates Congressional Taxing Authority; This Court Must Interpret the Extent of that Delegation .......... 44

B. As the CIT Held, Section 318(a) Does Not Authorize Duty-Free CSPV Products .......... 47

1. The Analysis Does Not Stop at the Dictionary Definition of Isolated Words or Broad Appeals to Policy .......... 48

2. Interpretive Canons Uniformly Favor Reading of "Other Supplies" to Exclude CSPV Products .......... 50

i. Grammar, Punctuation, Noscitur a Sociis, and Ejusdem Generis Favor a Measured Reading .......... 51

ii. The Rule Against Surplusage, Expressio Unius, the "Elephants in Mouseholes" Canon, Major Questions Doctrine, and Statutory Context Disfavor Intervenors' Broad Reading .......... 53

iii. A Measured Reading of "Other Supplies" Comports with Intervenors' Proffered Authorities .......... 59

iv. CSPV Products Do Not Fall Within a Measured Reading of "Other Supplies" .......... 61

C. Other Sources Are Not Controlling, But None Contradict the CIT's Interpretation .......... 62

1. Legislative History Contains No Meaningful Commentary .......... 62

2. Past Practice Confirms Measured Use of Section 318(a) .......... 63

i. Contemporaneous Practice Echoes the Statutory Language; the Court Should Disregard Intervenors' Untimely New Arguments and Information .................. 63

ii. Later Practice Is Distinguishable .................................. 65

V. Intervenors' *Post Hoc* Rationale for Commerce's *Duty Suspension Rule* Fails ........................................................................ 67

VI. The CIT's Relief Order Was Not an Abuse of Discretion ................. 71

A. The CIT's Irreparable Harm Finding Was Not Clearly Erroneous ......................................................................... 72

1. Intervenors Waived Arguments That Were Never Raised Below ......................................................................... 73

2. Intervenors Misconstrue the Liquidation Process; the CIT Identified Present Harm ................................................ 75

B. The CIT Did Not Clearly Err in Balancing Harms .................... 80

1. The Question Presented Is Whether the CIT's Consideration of Intervenors' Harm Was Clearly Erroneous ......................................................................... 81

2. The CIT Did Not Clearly Err in Assessing Nonexistent Evidence. Swift of Intervenors' Financial Exposure ............ 83

3. The CIT Did Not Clearly Err in Weighing Reliance Interests ......................................................................... 84

4. Intervenors Knowingly Accepted a Tradeoff and Otherwise "Harmed" Themselves by Inaction...................... 87

C. The CIT's Consideration of Public Interest Was Not Clearly Erroneous ......................................................................... 91

VII. Ordering Reliquidation Is Within the CIT's Power ........................ 94

A. The CIT Accurately Stated Entries' Liquidation Status............ 95

B. The CIT Has Power to Order Reliquidation ............................ 97

VIII. Any Remand Must Account for Plaintiffs' Unresolved Claims ............................ 99

IX. Conclusion ............................ 99

*Statement Pursuant to Fed. Cir. R. 25.1*

Confidential information removed from square brackets on pages 13-14 and 77-78 concerns certain declarants' statements regarding the alleged impacts of the Judgment of the U.S. Court of International Trade.

# Table of Authorities

Page(s)

U.S. Constitution

U.S. CONST. art. I, § 8, cl. 1 .......... 44
U.S. CONST. art. III .......... *passim*

Statutes

5 U.S.C. § 702 .......... 98
5 U.S.C. § 702(a)(2) .......... 26
5 U.S.C. § 706(1) .......... 28
19 U.S.C. § 1318(a) .......... *passim*
19 U.S.C. § 1484 .......... 75
19 U.S.C. § 1499 .......... 75
19 U.S.C. § 1501 .......... 96
19 U.S.C. § 1504(a)(1) .......... 42
19 U.S.C. § 1504(b) .......... 85, 86
19 U.S.C. § 1504(b)(1) .......... 19
19 U.S.C. § 1505(b) .......... 76
19 U.S.C. § 1514(a) .......... 90
19 U.S.C. § 1516a .......... 21, 35, 36, 39
19 U.S.C. § 1516a(a)(2)(A) .......... 33, 34
19 U.S.C. § 1516a(a)(2)(B) .......... 33
19 U.S.C. § 1516a(a)(2)(B)(vi) .......... *passim*
19 U.S.C. § 1592(a) .......... 96
19 U.S.C. § 1592(b) .......... 96
19 U.S.C. § 1592(d) .......... 14, 95, 96
19 U.S.C. § 1671 .......... 70
19 U.S.C. § 1673 .......... 70
19 U.S.C. § 1675 .......... 70
19 U.S.C. § 1677j .......... *passim*
19 U.S.C. § 1677j(b) .......... 3, 69, 70

19 U.S.C. § 1677j(b)(1) .... 3, 70
28 U.S.C. § 1581(c) .... *passim*
28 U.S.C. § 1581(i) .... *passim*
28 U.S.C. § 1581(i)(1)(B) .... 38
28 U.S.C. § 1581(i)(1)(D) .... 36, 38
50 U.S.C. § 1631 .... 67-68

<u>Regulations</u>

19 C.F.R. Part 362 .... 29, 67
19 C.F.R. § 174.11(b) .... 90
19 C.F.R. § 351.107(d) .... 90
19 C.F.R. § 351.107(e) .... 90
19 C.F.R. § 351.226(e)(2) .... 87
19 C.F.R. § 351.226(l)(2) .... 7
19 C.F.R. § 351.226(l)(3) .... 7, 30
19 C.F.R. § 362.101 .... 10, 67
19 C.F.R. § 362.102 .... *passim*
19 C.F.R. § 362.103 .... 10
19 C.F.R. § 362.103(a) .... *passim*
19 C.F.R. § 362.103(b) .... 30, 34, 41
19 C.F.R. § 362.103(b)(1) .... 16, 85
19 C.F.R. § 362.103(c) .... 16, 30, 34, 85
19 C.F.R. § 362.104 .... 11
*Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 (Sept. 20, 2021) (Final Rule) .... 93
*Procedures Covering Suspension of Liquidation, Duties and Estimated Duties in Accord With Presidential Proclamation 10414*, 87 Fed. Reg. 56,868 (Sept. 16, 2022) .... *passim*
*Procedures for Importation of Supplies for Use in Emergency Relief*, 71 Fed. Reg. 63,230 (Oct. 30, 2006) (Final Rule) .... 6, 66

<u>Court Decisions</u>

Acumed LLC v. Stryker Corp., 551 F.3d 1323 (Fed. Cir. 2008) ............ 81
Adee Honey Farms v. United States, 107 F.4th 1322 (Fed. Cir. 2024) ..... ........................................................................................ 57, 62
Advocate Health Care Network v. Stapleton, 581 U.S. 468 (2017) ....... 55
Alabama Assn. of Realtors v. Dept. of Health & Human Servs., 594 U.S. 758 (2021) ..................................................................................... 50
AM/NS Calvert LLC v. United States, 654 F. Supp. 3d 1324 (Ct. Intl Trade 2023) ........................................................................................ 98
American Signature, Inc. v. United States, 598 F.3d 816 (Fed. Cir. 2010) ......................................................................................... 92
American Signature, Inc. v. United States, 2007 WL 4224210 (Fed. Cir. 2007) ......................................................................................... 35
Anhydrides & Chemicals, Inc. v. United States, 130 F.3d 1481 (Fed. Cir. 1997) ........................................................................................ 51
Apple Inc. v. Samsung Electronics Co., 735 F.3d 1352 (Fed. Cir. 2013) ........................................................................... 81
Axiom Resource Management, Inc. v. United States, 564 F.3d 1374 (Fed. Cir. 2009) ........................................................................... 84
Barnhart v. Peabody Coal Co., 537 U.S. 149 (2003) ........................ 55, 61
Bostock v. Clayton County, Georgia, 590 U.S. 644 (2020) ..................... 50
Burlington Truck Lines, Inc. v. United States, 371 U.S. 156 (1962) ..... 68
California Steel Industries, Inc. v. United States, 48 F.4th 1336 (Fed. Cir. 2022) ................................................................................ 24, 26
Canadian Wheat Board v. United States, 641 F.3d 1344 (Fed. Cir. 2011 ........................................................................ 3, 76
Celsis In Vitro, Inc. v. CellzDirect, Inc., 664 F.3d 922 (Fed. Cir. 2012) ......................................................................... 3, 78
Chenery Corp., SEC v., 318 U.S. 80 (1943) ........................................... 68
Chenery Corp., SEC v., 332 U.S. 194 (1947) ......................................... 68
Chrysler Corp. v. Brown, 441 U.S. 281 (1979) ....................................... 26
Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001) ........................ 54
Clapper v. Amnesty Int'l USA, 568 U.S. 398 (2013) ............................. 27

Consolidated Bearings Co. v. United States, 348 F.3d 997 (Fed. Cir. 2003) ... *passim*

Cooper v. Harris, 581 U.S. 285 (2017) ... 23, 24

Department of Homeland Security v. Regents of the University of California, 140 S. Ct. 1891 (2020) ... 26

Diamond v. Charles, 476 U.S. 54 (1986) ... 24, 25

eBay Inc. v. MercExchange LLC, 547 U.S. 388 (2006) ... 23, 71-72, 83

Encino Motorcars, LLC v. Navarro, 579 U.S. 211 (2016) ... 69

Epic Systems Corp. v. Lewis, 584 U.S. 497 (2018) ... 54-55

Erwin Hymer Group North America, Inc. v. United States, 930 F.3d 1370 (Fed. Cir. 2019) ... 40

FAG Italia S.p.A. v. United States, 291 F.3d 806 (Fed. Cir. 2002) ... 71

Facebook, Inc. v. Duguid, 592 U.S. 395 (2021) ... 49, 50

Federated Department Stores, Inc. v. Moitie, 452 U.S. 394 (1981) . 27, 28

Gibbons v. Ogden, 22 U.S. (9 Wheat.) 1 (1824) ... 44

Glaxo Operations UK Ltd. v. Quigg, 894 F.2d 392 (Fed. Cir. 1990) ... 65

Golden Bridge Technology, Inc. v. Nokia, Inc., 527 F.3d 1318 (Fed. Cir. 2008) ... 64

Greenlaw v. United States, 554 U.S. 237 (2008) ... 82

Guangdong Wireking Housewares & Hardware Co. v. United States, 745 F.3d 1194 (Fed. Cir. 2014) ... 93

Gustafson v. Alloyd Co., 513 U.S. 561 (1995) ... 52

Haaland v. Brackeen, 599 U.S. 255 (2023) ... 28

Hall Street Associates, LLC v. Mattel, Inc., 552 U.S. 576 (2008) ... 53

Heckler v. Chaney, 470 U.S. 821 (1985) ... 26

i4i Ltd. Partnership v. Microsoft Corp., 598 F.3d 831 (Fed. Cir. 2010) . 81

Intellectual Tech LLC v. Zebra Technologies Corp., 101 F.4th 807 (Fed. Cir. 2024) ... 25

International Customs Products, Inc. v. United States, 467 F.3d 1324 (Fed. Cir. 2006) ... 43

International Rights Advocates v. Mullin, 177 F.4th 1366 (Fed. Cir. 2026) ... 24, 84

J.D. Irving, Ltd. v. United States, 119 F.4th 48 (Fed. Cir. 2024) ... 39

Jarecki v. G.D. Searle & Co., 367 U.S. 303 (1961) ... 52

K Mart Corp. v. Cartier, Inc., 486 U.S. 281 (1988)................................50
La Pub. Serv. Comm'n v. FCC, 476 U.S. 355 (1986) .............................71
Lazare Kaplan International, Inc. v. Photoscribe Technologies, Inc., 714 F.3d 1289 (Fed. Cir. 2013)............................................................82
Learning Resources, Inc. v. Trump, 607 U.S. 229 (2026)..... 44, 45, 56, 57
Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014) ..........................................................................................25
Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024).... 46, 47, 63, 65
Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ..............................24
Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803)................................47
Marshall Field & Co. v. Clark, 143 U.S. 649 (1892)........................ 45, 60
Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 567 U.S. 209 (2012)...................................................................98
MCI Telecommunications Corp. v. American Telephone & Telegraph Co., 512 U.S. 218 (1994) ..............................................................48
Medina v. Planned Parenthood S. Atl., 606 U.S. 357 (2025) ..........26, 27
Milner v. Department of Navy, 564 U.S. 562 (2011).............................62
Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091 (Fed. Cir. 2000)...........................................................................83-84
New Hampshire v. Maine, 532 U.S. 742 (2001) ....................................89
Nielson v. Preap, 586 U.S. 392 (2019) ..................................................51
Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc., 25 F.4th 998 (Fed. Cir. 2022)........................................................................88
North American Foreign Trading Corporation v. United States, 783 F.2d 1031 (Fed. Cir. 1986) ..............................................................25
Norton v. S. Utah Wilderness All., 542 U.S. 55 (2004) .........................28
Oman Fasteners, LLC v. United States, 125 F.4th 1068 (Fed. Cir. 2025) .............................................................. *passim*
Paroline v. United States, 572 U.S. 434 (2014)....................................54
PDS Consultants, Inc. v. United States, 133 Fed. Cl. 810 (2017) .........82
Perfectus Aluminum, Inc. v. United States, 391 F. Supp. 3d 1341 (Ct. Intl Trade 2019)...................................................................41
Perrin v. United States, 444 U.S. 37 (1979) ..........................................47

Porto Rico Railway, Light & Power Co. v. Mor, 253 U.S. 345 (1920) .... 54
Rack Room Shoes v. United States, 718 F.3d 1370 (Fed. Cir. 2013) ..... 25
Robert Bosch LLC v. Pylon Manufacturing Corp., 659 F.3d 1142 (Fed. Cir. 2011) .... 73
Robers v. United States, 572 U.S. 639 (2014) .... 58
Roman v. United States, 61 F.4th 1366 (Fed. Cir. 2023) .... 22-23
Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368 (Fed. Cir. 2006) .... 3, 87, 91
Shinyei Corp. of America v. United States, 355 F.3d 1297 (Fed. Cir. 2004) .... *passim*
Skidmore v. Swift & Co., 323 U.S. 134 (1944) .... 63
SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312 (Fed. Cir. 2006) .... 77
Southwest Airlines Co. v. Saxon, 596 U.S. 450 (2022) .... 53
Spokeo, Inc. v. Robins, 578 U. S. 330 (2016) .... 25
Sumecht NA, Inc. v. United States, 923 F.3d 1340 (Fed. Cir. 2019) .... 96, 97
Swift & Staley Inc. v. United States, 159 Fed. Cl. 731 (2022) .... 93
Ugine & ALZ Belgium v. United States, 551 F.3d 1339 (Fed. Cir. 2009) .... *passim*
United States v. Alpers, 338 U.S. 680 (1950) .... 59
United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989) .... 51
United States v. Texas, 599 U.S. 670 (2023) .... 24-25
United States v. Turkette, 452 U.S. 576 (1981) .... 57-58
United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.. 508 U.S. 439 (1993) .... 49, 50, 51
Upton v. Tribilcock, 91 U.S. 45 (1875) .... 87
Vandewater International Inc. v. United States, 130 F.4th 981 (Fed. Cir. 2025) .... 82, 97
Verizon Services Corp. v. Vonage Holdings Corp., 503 F.3d 1295 (Fed. Cir. 2007) .... 3, 79
Vinson v. Washington Gas Light Co., 321 U.S. 489 (1944) .... 97

Viskase Corp. v. American National Can Co., 261 F.3d 1316 (Fed. Cir. 2001) ... 73, 74

Wanxiang America Corp. v. United States, 12 F.4th 1369 (Fed. Cir. 2021) ... 29, 35

Washington State Department of Social & Health Services v. Guardianship Estate of Keffeler, 537 U.S. 361 (2003) ... 53

Watson v. Republican National Committee, 2026 WL 1855462 (2026) ... 63

West Virginia v. EPA, 597 U.S. 697 (2022) ... 46

Whitman v. American Trucking Associations, 531 U.S. 457 (2001) ... 56, 57

Windsurfing Int'l Inc. v. AMF, Inc., 782 F.2d 995 (Fed. Cir. 1986) ... 3, 88

Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008) . 92

Wisconsin Central Ltd. v. United States, 138 S. Ct. 2067 (2018) ... 47

Yates v. United States, 574 U.S. 528 (2015) ... 60

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952) ... 49

Zenith Radio Corp. v. United States, 710 F.2d 806 (Fed. Cir. 1983) ... 41, 42, 79

<u>Administrative Determinations</u>

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (June 2025) ... 91,78

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China: Initiation of Circumvention Inquiry on the Antidumping Duty and Countervailing Duty Orders*, 87 Fed. Reg. 19,071 (Apr. 1, 2022) ... 5

*Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (June 2025) ... 91,78

*Final Scope Determination and Final Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 88 Fed. Reg. 57,419 (Aug. 23, 2023) .......................... *passim*

*Preliminary Affirmative Determinations of Circumvention With Respect to Cambodia, Malaysia, Thailand, and Vietnam*, 87 Fed. Reg. 75,221 (Dec. 8, 2022) ................................................................ 7, 9, 17

Executive Branch Materials

Applicability of the National Emergencies Act to Statutes That Do Not Expressly Require the President to Declare a National Emergency, 2016 WL 10590109 (O.L.C. Aug. 24, 2016) ....................................... 68

*Proclamation 2093: Emergency Due to Drought—Free Importation of Feed for Livestock,* 49 Stat. 3,404 (Aug. 10, 1934) ........................ 63-64

*Proclamation 2223: Emergency Due to Flood Conditions—Free Importation of Food, Clothing, and Medical, Surgical, and Other Supplies for Use in Emergency Relief Work,* 2 Fed. Reg. 273 (Feb. 3, 1937) ................................................................................................ 64

*Proclamation 2498: Emergency Due to Drought—Free Importation of Forage for Livestock,* 6 Fed. Reg. 3,715 (July 29, 1941) .................... 64

*Proclamation 2545: Free Importation of Jerked Beef,* 7 Fed. Reg. 2,611 (Apr. 7, 1942)........................................................................................ 64

*Proclamation 2553: Emergency Due to State of War—Free Importation by the American National Red Cross of Food, Clothing, and Medical, Surgical, and Other Supplies,* 7 Fed. Reg. 3,143 (Apr. 30, 1942) ...... 64

*Proclamation 2708: Emergency Due to Housing Shortage—Free Importation of Timber, Lumber, and Lumber Products*, 11 Fed. Reg. 12,695 (Oct. 29, 1946) ................................................................ 65-66

*Proclamation 10414: Declaration of Emergency and Authorization for Temporary Extensions of Time and Duty-Free Importation of Solar Cells and Modules From Southeast Asia*, 87 Fed. Reg. 35,067 (June 9, 2022)........................................................................................ *passim*

Other Legislative Materials

H. Doc. 15 (May 9, 1929) ................................................................... 62

H.J. Res. 39 (2023) .......... 63

Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 (1994) .......... 79

Tariff Act of 1930, Pub. L. No. 71-361, 46 Stat. 590 .......... 57, 58, 61

Veterans Emergency Housing Act of 1946, Pub. L. No. 79-388, 60 Stat. 207 .......... 65, 66

Court Rules

Fed. Cir. R. 25.1(d)(1)(A) .......... 78
Fed. Cir. R. 47.5(a)(2) .......... 1

## STATEMENT OF RELATED CASES

No case "will directly affect or be directly affected by" this appeal. Fed. Cir. R.47.5(a)(2). Plaintiff-Appellees, Auxin Solar Inc. and Concept Clean Energy Inc. (hereinafter "Plaintiffs"), are harmed by unlawful non-enforcement of the U.S. Department of Commerce's ("Commerce") determinations that crystalline silicon photovoltaic ("CSPV") cells, whether or not assembled into modules, ("CSPV Products") from Cambodia, Malaysia, Thailand, and Vietnam were circumventing antidumping and countervailing duty ("AD/CVD") orders on CSPV Products from the People's Republic of China ("PRC"). Because Commerce's circumvention determination concerning Malaysia was not appealed, even adverse rulings in all pending appeals of Commerce's circumvention determinations concerning certain Cambodian, Thai, and Vietnamese entities could not extinguish Plaintiffs' harm. *See BYD H.K. Co., Ltd. v. United States*, CAFC Consol. Ct. No. 25-1937; *Trina Solar (Vietnam) Science & Technology v. United States*, CAFC Ct. No. 26-1844.

## ISSUE STATEMENT

1. Intervenors' own circumvention caused Commerce to find their CSPV Products are within the PRC AD/CVD Orders. Intervenors have no legally protectable interest in non-payment of lawful AD/CVD duties and no entitlement to a discretionary Duty Suspension Rule that Commerce has abandoned. Nor have Intervenors identified any law by which the Court could compel Commerce to adopt the abandoned Rule. Have Intervenors established independent Article III standing? (**Section II**).

2. Commerce promulgated an unlawful Duty Suspension Rule by notice-and-comment procedures, then applied that Rule to block enforcement of subsequent determinations as to whether CSPV Products were circumventing the PRC AD/CVD Orders. Commerce itself expressly distinguished its "affirmative circumvention findings" from their "implementation," stating that the Rule precluded the latter. Consistent with *Shinyei* and *Ugine II*, Commerce's Rule and instructions to U.S. Customs and Border Protection ("CBP") derived from the Rule are not determinations identified under 19 U.S.C. § 1516a(a)(2)(B)(vi) of which 28 U.S.C. § 1581(c) provides for judicial review. Does jurisdiction over Plaintiffs' implementation and enforcement challenges lie under 28 U.S.C. § 1581(i)? (**Section III**).

3. Section 318(a) of the Tariff Act of 1930, as amended, delegates some of Congress' Constitutional taxing power. Congress listed specific product groups eligible for emergency tariff suspension: "food, clothing, and medical, surgical, and other supplies." Punctuation and grammar link "other supplies" to "medical…supplies" and "surgical…supplies," and *noscitur a sociis* and *ejusdem generis* support reading "other supplies" as similar to these neighboring words. Meanwhile, reading "other supplies" as exceeding healthcare supplies, is resisted by the rule against surplusage, *expressio unius*, the "Elephants in Mouseholes" canon, the Major Questions Doctrine, and the Tariff Act's intricate, product-specific tariff schedule. Does Section 318(a)'s reference to "medical, surgical, and other supplies" encompass CSPV Products? (**Section IV**).

4. Neither the emergency Proclamation nor Commerce's regulations asserted that 19 U.S.C. § 1677j(b)(1) alone could support the Duty Suspension Rule. The National Emergencies Act ("NEA") and rule against post hoc rationalizations each prohibits sustaining the Rule using Section 1677j(b)(1). Substantively, Section 1677j(b)(1) empowers Commerce to include circumventing merchandise within an Order's scope, but the Duty Suspension Rule instead suspends all AD/CVD enforcement for products that have been deemed in-scope. Can the Rule's suspension of AD/CVD enforcement be sustained as a standalone exercise of Section 1677j(b)(1) rulemaking? (**Section V**).

5. Consistent with *Oman Fasteners*, *Celsis*, and *Verizon*, the CIT found that the Duty Suspension Rule drove lost sales, damaged customer relationships, and caused ongoing economic and competitive harm that threatens the viability of Auxin's business. The CIT's finding of present harm is further supported by *Canadian Wheat* because all known entries potentially qualifying for duty-free treatment under the Rule remained unliquidated. Intervenors'[1] post-judgment declarations further corroborate the continuing harm. Did the CIT clearly err in finding irreparable harm? (**Section VI.A**).

6. When reviewing the CIT's balance of harms analysis, evidence that was withheld until after judgment and asserted harms to non-appealing entities are irrelevant. As in *Sanofi-Synthelabo* and *Windsurfing*, Intervenors took a "calculated risk" in eschewing available prophylactic measures, despite having recognized their exposure and embraced the Duty Suspension Rule's tradeoffs from the outset. Because importers voluntarily applied the Rule on an entry-by-entry basis, Intervenors could have used the Rule while subjecting other circumventing CSPV Product entries to AD/CVD procedures to pursue individual rates. Thus far, at least one Intervenor successfully did so during every relevant administrative review. Comparing Intervenors'

[1] "Intervenors" refer to all entities captioned as "Defendants-Appellants."

foreseeable, self-inflicted "harms" to Plaintiffs' severe harm, was the CIT's balancing clearly erroneous? (**Section VI.B**).

7. Consistent with *Oman Fasteners* and the Government's recognized interest in circumvention enforcement, the CIT found that the public interest was served by ordering the Government to comply with the law. At no point before the CIT did the Government argue that its policy interests would be harmed by AD/CVD collection. Did the CIT clearly err in considering the public interest? (**Section VI.C**).

8. The CIT correctly found that no liquidated entry was found eligible for duty-free treatment by CBP, but ordered reliquidation as a just-in-case measure requested by the Government, which is the party enjoined. Applying *Patchak*'s logic, because Plaintiffs properly invoked Section 1581(i) jurisdiction, no other statute addresses Plaintiffs' grievance or narrows the CIT's broad powers. Did the CIT lawfully order the Government to reliquidate entries with AD/CVD duties, if necessary? (**Section VII**).

## STATEMENT OF THE CASE

Antidumping and countervailing duty orders were imposed on CSPV Products from the PRC in 2012. Appx162-Appx165 (AD Order); Appx166-167 (CVD Order) (together, "PRC AD/CVD Orders"). Thereafter, CSPV Products from Cambodia, Malaysia, Thailand, and Vietnam completely replaced PRC imports, increasing from $578 million in 2011 to $5.6 billion in 2021. Appx2536-Appx2537. This exponential increase was not happenstance; rather, PRC multinationals funded by the Chinese Communist Party sought to use Cambodia, Malaysia, Thailand, and Vietnam as export platforms to harm U.S. CSPV Product manufacturers. Yet, because the Chinese only offshored final assembly operations, CSPV Products assembled in those four countries incorporated nearly 100% Chinese-origin inputs.

As this unfair trade hollowed out the U.S. solar manufacturing base, a small company petitioned for Commerce to address rampant circumvention via Cambodia, Malaysia, Thailand, and Vietnam. Appx2594-Appx3535 (Anti-Circ. Pet.). But just two months after Commerce found merit in the allegations and initiated circumvention inquiries, *Notice of Initiation*, 87 Fed. Reg. 19,071 (Apr. 1, 2022),

President Biden sided with special interests and the Chinese Communist Party, *see* Appx4654-4691 (Req. *Ex Parte* Comms.), and took the unprecedented step of proclaiming a two-year "emergency" to exist under 19 U.S.C. § 1318(a) "with respect to the threats to the availability of sufficient electricity generation capacity to meet expected consumer demand," Appx233-Appx235 (*Proclamation 10414*, 87 Fed. Reg. 35,067 (June 9, 2022), hereinafter "Proc.").

Despite the ostensible breadth of the electricity generation capacity "emergency," Commerce's "authority" was circumscribed <u>exclusively</u> to "*consider* taking appropriate action" to permit duty-free imports of "solar cells and modules, exported from the Kingdom of Cambodia, Malaysia, the Kingdom of Thailand, and the Socialist Republic of Vietnam"—*i.e.*, the specific products subject to then-ongoing circumvention inquiries. Appx234 (Proc.) (emphasis supplied).

Acting in response to "*Proclamation 10414* and pursuant to its authority under section 318(a)," Commerce ignored pre-existing Section 318(a) regulations it had developed after Hurricane Katrina, *see* Appx156-Appx161 (2006 Regs.), and hastily prepared flawed regulations that preemptively absolved CSPV Products imported from

Cambodia, Malaysia, Thailand, and Vietnam of any AD/CVD duty liability, including potential liability arising from then-pending circumvention determinations. Appx313-332 ("*Duty Suspension Rule*" or "Rule"). Consequently, despite (1) Commerce issuing affirmative *Preliminary Circumvention Determinations* on December 8, 2022, finding that CSPV Products from all four countries were circumventing the AD/CVD orders on PRC products, *see* Appx487-Appx608 (Prelim. Circumvention Dets.), and (2) Commerce regulations obligating Commerce to instruct CBP to suspend liquidation and collect cash deposits for such entries, 19 C.F.R. 351.226(l)(2),Commerce instead cited the *Duty Suspension Rule* as justification for not instructing CBP to do so, *see* Appx609-Appx645 (Prelim. CBP Instr.).

Commerce finalized its affirmative country-wide findings that Cambodian, Malaysian, Thai, and Vietnamese CSPV Products were described by the PRC AD/CVD Orders by reason of circumvention. *See* Appx1433-Appx1447 (Final Circumvention Dets.). Again, Commerce's circumvention regulation obliged it to instruct CBP to suspend liquidation, collect AD/CVD cash deposits, and ultimately assess AD/CVD duties on such entries. 19 C.F.R. 351.226(l)(3). But again,

Commerce refused to instruct CBP to do so, instead using the crudely designed *Duty Suspension Rule*. *See* Appx1448-Appx1485 (Final CBP Instr.).

These enforcement failures harmed Auxin's ability to manufacture CSPV Products that could redress the specific "emergency" cited in *Proclamation 10414*. U.S. imports of CSPV Products from the circumventing countries reached an unprecedented $7.37 billion in 2022, $6 billion of which coincided with the gaping hole in otherwise-enforceable AD/CVD duties created by the *Duty Suspension Rule*. *See* Appx5221. The situation grew exponentially worse in 2023, as U.S. imports from the circumventing countries exceeded $14 billion, Appx4816, more than double the value that precipitated Auxin's circumvention inquiry petition and far exceeding U.S. CSPV installation capacity.

Thus, in December 2023, Plaintiffs commenced suit to arrest these disastrous effects. Unfortunately, the rapid growth in CSPV Product imports only continued, with a 30% year-over-year increase from circumventing countries between January and May 2024. Appx4816. This flood of excess supply further crashed domestic CSPV Product

prices below costs. *See* Appx4838 (Oral Argument Transcript ("Tr.")). The CIT reviewed the lawfulness of Commerce's use of the *Duty Suspension Rule* to defeat AD/CVD enforcement, holding that the Rule exceeds the bounds of Section 318(a), the statute on which *Proclamation 10414*'s based its "authorization" of Commerce to "consider" acting. Appx73-Appx110 (Slip Op., "Op."). The CIT ordered the Rule's vacatur and directed the Government to liquidate and, if necessary, reliquidate entries that had relied on the *Duty Suspension Rule* to avoid AD/CVD cash deposit and duty assessment.

Intervenors—not the Government—challenge the CIT's exercise of subject matter jurisdiction, statutory analysis, and order of injunctive relief.

## I. Facts Related to the CIT's Proper Exercise of Jurisdiction

Through notice-and-comment proceedings, Commerce published the final *Duty Suspension Rule* several months <u>before</u> rendering either preliminary or final determinations in then-ongoing circumvention inquiries covering CSPV Products imported from Cambodia, Malaysia, Thailand, and Vietnam. *Compare* Appx313 (Rule), *with* Appx487 (Prelim. Circ. Dets.). Commerce characterized its Rule, promulgated

under Section 318(a), as "set{ting} forth the actions the Secretary is taking to respond to the emergency declared in Presidential Proclamation 10414," 19 C.F.R. 362.101 (emphasis supplied), and promulgated this regulation despite extensive objections, *see, e.g.*, Appx2550-Appx2555, Appx3537-Appx3601 (Compl.). The new regulation applied to AD/CVD enforcement of circumvention inquiries as well as new AD/CVD investigations. 19 C.F.R. 362.103(a).

Specifically, the *Duty Suspension Rule* precluded suspension of liquidation, AD/CVD cash deposit collection, and assessment of AD/CVD duties upon liquidation for, *inter alia*, circumventing products. 19 C.F.R. 362.103 (stated in mandatory terms of "will," "shall," and "shall not"). The *Duty Suspension Rule*—and not any other administrative proceeding—also established regulatory definitions of, *e.g.*, "Applicable Entries," "Utilization," and the "Utilization Expiration Date," 19 C.F.R. 362.102, that Solar Plaintiffs target in their Complaint, *see, e.g.*, Appx2564-Appx2574 (Compl.). Plaintiffs' case challenges the unlawful Rule and Commerce's application thereof, which foreordained non-enforcement of pending circumvention inquiries.

Commerce precluded briefing the *Duty Suspension Rule*'s lawfulness during circumvention proceedings. *See* Appx646 (Admin. Brief Instructions).[2] Indeed, Commerce's final circumvention determinations summarily reiterated that the separate *Duty Suspension Rule* bound Commerce:

> {I}n response to Presidential Proclamation 10414, Commerce added Part 362 to its regulations to implement the Proclamation and these regulations, as well as CBP instructions issued by Commerce, specify that no Ads/CVDs will be collected on solar cells and modules entering the United States to which Presidential Proclamation 10414 applies. Thus, Commerce's affirmative circumvention findings ***cannot be implemented*** until the {Suspension Period} expires.

Appx843 (Cambodia), Appx1004 (Malaysia), Appx1173 (Thailand), Appx1336 (Vietnam) (emphasis supplied). Commerce otherwise stated that it "has already addressed the legality of its authority to issue the regulations under Presidential Proclamation 10414 in the Final Rule Preamble, itself," Appx885-Appx886 (Cambodia); Appx1046 (Malaysia); Appx1216 (Thailand); Appx1384 (Vietnam), and merely quoted or

---

[2] Parties could comment on certain certification details that the *Duty Suspension Rule* did not address. *Compare* Appx646 (Admin. Brief Instructions), *with* 19 C.F.R. 362.104 (empowering Commerce to require certifications).

paraphrased rationales from that preamble, *see* Appx885-Appx888 (Cambodia); Appx1046-Appx1049 (Malaysia); Appx1216-Appx1218 (Thailand); Appx 1383-Appx1386 (Vietnam). Indeed, Commerce explicitly characterized the *Duty Suspension Rule* as "***distinct from*** the {circumvention} proceedings at hand," and relied on this "distinction" to avoid producing *ex parte* memoranda of communications between the government and China-linked interested parties in the lead-up to the *Duty Suspension Rule*. Appx879 (Cambodia); Appx1039 (Malaysia); Appx1209 (Thailand); Appx1377 (Vietnam) (emphasis supplied).

## II. Facts Related to the Scope of Relief Ordered by the CIT

### A. Plaintiffs Provided Unchallenged Evidence of Irreparable Harm

Initially "stifled in its growth by…unfair {circumvention} trade practices," Auxin sought protection available under U.S. law through a circumvention inquiry. Appx3649-Appx3650 (Compl.). After the President subsequently declared an emergency, and despite Auxin "ha{ving} the capacity to help redress the emergency," it was unable to compete with the relentless waves of low-priced imports that the *Duty Suspension Rule* enabled to avoid AD/CVD discipline. Appx3653 (Compl.). Consequently, "prices for solar panels {when Auxin filed its Complaint we}re even lower than…when Auxin deemed it necessary to

petition for circumvention inquiries," Appx3653 (Compl.), having crashed from "above 30 cents a watt, which is already squeezing the domestic industry's ability to break even on a sale, down to 14 cents/15 cents a watt," Appx4838 (Tr.). This "caused severe damage, decimating the U.S. industry through unrestrained volumes of unfairly traded low-priced imports." Appx4857-Appx4858 (Tr.).

As attested in a Declaration included with Plaintiffs' Complaint, if left unremedied, these conditions are expected to drive Auxin out of the CSPV module production business altogether, Appx3653-Appx3654 (Compl.), specifically drive lost sales, Appx3657-Appx3663 (Compl.), and result in CSPV modules entering at prices below Auxin's raw material costs, Appx3653 (Compl.); *see also* Appx5018 (Prelim. Inj. Mtn.). Auxin has suffered reputational harm for exercising its right to pursue circumvention remedies, Appx3651 (Compl.), only for those remedies to be summarily unenforced, Appx3650-Appx3651 (Compl.). And the unrelenting volumes of CSPV Product imports during the "emergency," *see* Appx5052 (Prelim. Inj. Mtn.); Appx4815-Appx4816 (R56.1 Mtn.), depressed market prices throughout CIT proceedings. Even [ change ] on *Duty Suspension Rule* [ object] would impact

[ impact ] and [ impact ]. Appx4973-4974, Appx4983-4984 (Intervenor Declarations).

Before the CIT, no party challenged Auxin's evidence of harm. Thus, the CIT found "the massive influx of duty-free CSPV cells and modules depressed prices below plaintiffs' raw material costs" as well as "evidence of lost business opportunities linked directly to the emergency proclamation" such that "Plaintiffs have demonstrated that they risk being forced out of the CSPV module production business entirely." Appx103-Appx104 (Op.). It is only the promise of an eventual remedy that has provided some semblance of relief to Auxin.

### B. All Evidence Before the CIT Established that No Entries Qualifying for the Duty Suspension Rule Had Liquidated

During oral argument, counsel to the Government reported that all entries that invoked the Duty Suspension fell into one of three categories:

- **Liquidated, but Ineligible (approximately 9,000 entries):** CBP found these entries "not to be compliant with the duty suspension rule" and is "demanding payment of duties pursuant to {19 U.S.C. §} 1592(d)." Appx4823 (Tr.).
- **Unliquidated, and Ineligible (approximately 14,600 entries):** CBP found these entries "not to qualify for coverage under the duty suspension rule." *Id.*

- **Unliquidated, and Under Review (approximately 20,400 entries):** subject to a manual entry-by-entry review. *Id.*

As of June 25, 2025, "the government {wa}s not aware of ***any entries*** that were properly liquidated without AD or CVD duties, consistent with the rule." Appx4824 (Tr.) (emphasis supplied). Intervenors' counsel did not contest the Government's assertions or claim that CBP had found even one compliant, liquidated entry. *See* Appx4859, Appx4902-Appx4903 (Tr.). Consequently, the evidence before the CIT at the time of judgment indicated that any remedy must primarily address the 35,000 **un**liquidated entries for which CBP was not already pursuing duties.

### C. Intervenors Overstate their "Harms" and Omit their Failures to Mitigate

Intervenors were not helpless and could have obtained individual AD/CVD rates. Many companies did so. Importers ***chose*** which, if any, of their entries would apply the *Duty Suspension Rule*, with its attendant certification and use responsibilities. 19 C.F.R. 362.102 (definitions of "Applicable Entries" and "Utilization"); Appx1448-1485 (certifications). When applied to an entry, the Rule prevented (A) suspension of liquidation; (B) collection of AD/CVD cash deposits at

entry; and (C) assessment of AD/CVD duties at liquidation. 19 C.F.R. 362.103(a), (b)(1), (c).

These tradeoffs were inherent from the Rule's inception, *see* Appx241-Appx242 (Proposed Rule), and were addressed in several Intervenors' rulemaking comments, *see* Appx5279 (Pls. Opp. Intervention). No Intervenor asked Commerce to enable the suspension of liquidation for Rule-using entries. Rather, as the CIT recognized, Intervenors "wanted the duty suspension rule and one thing that came with it was the fact that there were no {entries} suspended." Appx4871 (Tr.). NextEra stated that the rule "should be adopted as drafted." Appx5140 (NEE Cmts.). SEIA requested that Commerce "finalize its rule waiving any suspension of liquidation" and "adopt its proposed rule." Appx5160-Appx5161 (SEIA Cmts.). BYD's and Canadian Solar's comments acknowledged that "{p}rior to liquidation by CBP, importers will not be certain of their final duty liability" and would need "to wait up to 314 days (or more) for confirmation from CBP that these imports will not be retroactively subject to duties." Appx1507 (BYD Cmts.); Appx5093 (CSI Cmts.). Despite this exposure, none asked to permit suspension of liquidation. *See id.*

By contrast, Auxin and four other entities submitted comments arguing that Commerce's proposed Duty Suspension Rule was unlawful. *See* Appx243-308 (Auxin Cmts.); Appx1519-Appx1528 (Heliene Cmts.); Appx1509-Appx1518 (CSUSTL Cmts.); Appx309-Appx312 (KDW Cmts.); Appx1529-Appx1537 (SSA Cmts.). Auxin specifically challenged the proposal to not suspend liquidation. Appx260-Appx264 (Auxin Cmts.). In finalizing the Rule, Commerce acknowledged BYD's and Canadian Solar's concerns about pre-liquidation exposure but confirmed that "liquidation of any relevant entries will occur in the normal course," Appx326 (Rule), a point that the CIT acknowledged, Appx4888-Appx4890 (Tr.).

Commerce finalized the Rule before making preliminary circumvention determinations. *Compare* Appx313 (Rule), *with* Appx487 (Prelim. Circ. Dets.). Throughout the circumvention inquiry, in which nearly all Intervenors participated, Auxin periodically reasserted the *Duty Suspension Rule*'s unlawfulness. *E.g.*, Appx448-Appx482 (Auxin Pre-Prelim. Cmts.); Appx661-Appx765 (Auxin Admin. Br.); *see also* Br. at 18-25 (summarizing examples).

The Duty Suspension eligibility period overlapped with three AD administrative review periods and three CVD administrative review periods. *See* 19 C.F.R. 362.102 (Defining "Applicable Entries"). The first review request deadline was:

- **January 3, 2023:** Sales made 12/1/2021—11/30/2022 (AD Duties). Appx483-Appx486.

Plaintiffs challenged the Duty Suspension Rule in court on December 29, 2023, four months after Commerce's final affirmative circumvention determination. Appx2578 (Compl.). At minimum, Intervenors' counsel acknowledged having notice of the dispute from this date. Appx4854 (Tr.). All other relevant administrative review request deadlines came later:

- **January 2, 2024:** Sales made 12/1/2022—11/30/2023 (AD Duties) and 1/1/2022—12/31/2022 (CVD duties). Appx1486-Appx1490.
- **December 31, 2024:** Sales made 12/1/2023—11/30/2024 (AD Duties) and 1/1/2023—12/31/2023 (CVD Duties). Appx1584-Appx1587.

The CIT issued final judgment, ordering vacatur of the *Duty Suspension Rule* and liquidation or reliquidation with AD/CVD duties, on August 22, 2025. Appx73-Appx112 (Op.). The final relevant deadline for requesting an administrative review was:

- **December 31, 2025:** Sales made 1/1/2024—12/31/2024 (CVD Duties). Appx1640-Appx1645.

As Commerce promised in finalizing the *Duty Suspension Rule*, aside from the lack of suspension, standard liquidation procedures applied. *See* Appx326 (Rule). Thus, to assess Rule compliance, CBP utilized its ordinary statutory authority to notify importers that liquidation would be extended. Appx4825 (Tr.). For the earliest affected entries, CBP could extend liquidation through April 1, 2026. *Id.*; *see also* 19 U.S.C. § 1504(b)(1).

Administrative reviews remained both theoretically and practically accessible. Indeed, given the uncertainties described above, Commerce was specifically asked to examine circumventing CSPV Product entries for at least three Intervenors in ***every*** administrative review implicated by the Duty Suspension period. *See* Addendum. Mostly, Intervenors requested these reviews themselves, naming entities in the circumventing countries or expressly referencing the circumvention proceedings. *See, e.g.*, Appx1553-Appx1554 (Trina Req.); Appx1561 (CSI Req.). The CIT noted this. Appx4878-Appx4879 (Tr.).[3]

[3] Reference to "Edelschick" in transcript should be "Beline."

| Appellant | Administrative Review Period | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | AD'21-'22 (Final) | | AD'22-'23 (Final) | | AD'23-'24 (Prelim) | | CVD'22 (Final) | | CVD'23 (Prelim) | | CVD'24 (Initiation) |
| | Reviewed | Rate | Reviewed | Rate | Reviewed | Rate | Reviewed | Rate | Reviewed | Rate | Reviewed |
| Boviet Solar Technology Co., Ltd. | Gray | Gray | Gray | Gray | Green | Green | Gray | Gray | Green | Green | Green |
| BYD H.K. Co., Ltd. | Green | Gray | Green | Green | Green | Green | Green | Gray | Green | Green | Green |
| Canadian Solar Int'l Ltd. | Gray | Gray | Green | Gray | Green | Green | Green | Gray | Green | Gray | Green |
| JA Solar Vietnam Company Ltd. | Gray | Gray | Gray | Gray | Green | Green | Gray | Gray | Green | Green | Green |
| JA Solar Int'l Ltd. | Gray | Gray | Gray | Gray | Green | Gray | Gray | Gray | Green | Green | Green |
| Jinko Solar Technology Sdn. Bhd. | Green | Gray | Green | Gray | Green | Gray | Gray | Gray | Gray | Gray | Green |
| Jinko Solar (Malaysia) Sdn. Bhd. | Green | Gray | Green | Gray | Green | Gray | Gray | Gray | Gray | Gray | Green |
| Jinkosolar Middle East DMCC | Green | Gray | Green | Gray | Green | Gray | Gray | Gray | Gray | Gray | Green |
| Risen Solar Technology Sdn. Bhd. | Gray | Gray | Green | Gray | Gray | Gray | Green | Gray | Gray | Gray | Gray |
| Trina Solar Science & Technology (Thailand) Ltd. | Green | Green | Green | Green | Green | Gray | Green | Green | Green | Green | Green |
| Trina Solar Energy Development Co. Ltd. | Green | Gray | Green | Green | Green | Gray | Gray | Gray | Green | Green | Green |

Source: AD'21-'22 Final, Appx1498-Appx1501; AD'22-'23 Final, Appx1646-Appx1649; AD'23-'24 Prelim, Appx1704-Appx1708; CVD'22 Prelim, Appx1636-Appx1639; CVD'22 Final, Appx1690-Appx1692; CVD'23 Prelim, Appx1700-Appx1703; CVD'24 Initiation, Appx1696-Appx1697

Green denotes consideration in the review ("Reviewed") and calculation of a rate in the latest portion of the review completed to date ("Rate").

Consequently, Commerce has thus far calculated preliminary or final individual AD/CVD duty rates for ***seven*** Intervenor companies, including at least one such company during ***every*** administrative review implicated.

Even Intervenors that neglected to timely request AD/CVD administrative reviews have argued—before filing their opening brief here—that Commerce can expand the review period to cover earlier entries. *See* Appx1670 (JA Solar Req.); Appx1686-Appx1688 (Trina Req.); Appx1679-Appx1681 (Jinko Req.). Thus, Intervenors believe they can benefit from an administrative review.

## SUMMARY OF ARGUMENT

Intervenors cannot establish independent Article III standing. They have no injury-in-fact because there is no legally protected interest in non-payment of lawful tariffs and no right to discretionary duty treatment that Commerce elected to abandon. Any injury is caused by Intervenors' circumvention, and the Court cannot compel Commerce to readopt an abandoned discretionary act. (**Section II**).

Plaintiffs challenge Commerce's refusal to enforce its own determinations through a separate statutory and regulatory regime

and implementing instructions. Under *Shinyei*, *Ugine II*, and the plain text of Sections 1581 and 1516a, such claims fall squarely within Section 1581(i). Intervenors rely on mischaracterizations of Plaintiffs' action and otherwise disregard binding precedent. The CIT faithfully applied controlling law. (**Section III**).

Intervenors' statutory arguments lack textual support and find no basis in statutory interpretive tools, judicial precedent, or legislative history. Section 318(a) of the Tariff Act of 1930 provides circumscribed authority to Commerce to permit duty-free imports. Commerce exceeded that authority here. (**Section IV**).

Statutory authority that was not invoked in the President's emergency proclamation or embraced by Commerce either administratively or before the CIT provides no basis to sustain the *Duty Suspension Rule*, which Commerce has abandoned by dismissing its appeal. In any event, Section 1677j does not address the assessment of AD/CVD duties, which is the issue presented by the Rule. (**Section V**).

The CIT did not abuse its discretion in ordering injunctive relief. Plaintiffs' ongoing harm is uncontested and well-supported, and

Intervenors' own post-judgment declarations confirm that duty assessment continues to affect current market prices. Nor did the CIT clearly err in balancing harms associated almost exclusively with unliquidated entries. Intervenors otherwise incorrectly downplay the extent to which they could have mitigated exposure that was recognized even before the *Duty Suspension Rule* was finalized. (**Section VI**).

The CIT accurately understood the liquidation status of entries at issue. In all cases under the CIT's residual jurisdiction, no other statute can be addressed to the grievance presented; thus, equitable relief—including an injunction requiring reliquidation—is available under the CIT's broad remedial powers. Here, moreover, the Government not only stipulated to reliquidation, it expressly requested as much. (**Section VII**).

## ARGUMENT

### I. Areas of Disagreement Regarding Standards of Review

In reviewing the CIT's ultimate conclusions regarding subject matter jurisdiction, this Court "accepts well-pleaded factual allegations as true." *Roman v. United States*, 61 F.4th 1366, 1370 (Fed. Cir. 2023).

"Findings of fact relating to jurisdictional issues are reviewed for clear error." *Id.*

Because Plaintiffs do not challenge the Presidential Proclamation, *e.g.*, App2540 (Compl.), standards for reviewing Presidential factfinding are irrelevant, *see* Intervenors' Opening Br., ECF 44 (Mar. 30, 2026) at 14 ("Br."). Nor did Commerce act "on behalf of" the President or invoke "discretionary authority committed to the President," *see* Br. at 14; rather, Commerce invoked (and exceeded) its own statutory authority that it had been "authorized" to "consider" using. *See* Section IV.A, *infra*; Appx234 (Proc.).

Finally, the CIT's discretionary decision to order injunctive relief is reviewable for abuse of discretion. *eBay Inc. v. MercExchange LLC*, 547 U.S. 388, 391 (2006). Such abuse "may be established by…a clear error of judgment in weighing the relevant factors or {an} exercise{ of} discretion based on an error of law or clearly erroneous fact findings." *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1084 (Fed. Cir. 2025). "{T}he very premise of clear error review is that there are often two permissible—because two plausible—views of the evidence."

*Cooper v. Harris*, 581 U.S. 285, 299 (2017) (internal quotation marks omitted).

**II. Intervenors Lack Independent Standing**

The CIT found only that Intervenors established "piggyback" standing. Appx57 (Op.). Because the Government has not appealed, it has abandoned defense of the *Duty Suspension Rule*, such that Intervenors have "no case…to join." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). Nor can Intervenors establish their own Article III case. *See id.* Indeed, Intervenors' opening brief contains no argument that standing requirements—injury-in-fact, causation, and redressability—are satisfied, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), despite their well-established burden to do so, *California Steel Indus., Inc. v. United States*, 48 F.4th 1336, 1343 (Fed. Cir. 2022). Hereafter, any such arguments absent from Intervenors' motions to intervene should be deemed forfeited. *See Int'l Rts. Advocs. v. Mullin*, 177 F.4th 1366, 1375 (Fed. Cir. 2026) (asserted injury absent from complaint was forfeited).

Injury-in-fact requires "invasion of a legally protected interest," *Lujan*, 504 U.S. at 560, *i.e.*, an interest that is "legally and judicially

cognizable," *United States v. Texas*, 599 U.S. 670, 676 (2023); *cf. also Spokeo, Inc. v. Robins*, 578 U. S. 330, 341 (2016) ("Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.") (cleaned up). Mere tariff payments do not qualify because there is no "legally protected interest in not paying {lawful} tariffs." *Rack Room Shoes v. United States*, 718 F.3d 1370, 1375 (Fed. Cir. 2013); *see also N. Am. Foreign Trading Corp. v. United States*, 783 F.2d 1031, 1032 (Fed. Cir. 1986) ("No vested right to a particular classification or rate of duty or preference is acquired at the time of importation."). Neither the Administrative Procedure Act ("APA") nor Section 318(a) creates a "legally protected interest" in Intervenors' potential tariff payments, as neither statute establishes even an "arguable" entitlement to Section 318(a) action. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014); *see also Intell. Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 813 (Fed. Cir. 2024) (requiring that plaintiff "retained an exclusionary *right*, *i.e.*, infringement would amount to an invasion of IT's legally protected interest") (emphasis supplied); *Diamond*, 476 U.S. at 65 (no injury in fact where no "right to compel a State to enforce its laws").

"{A}s a practical matter, 'when an agency refuses to act' there is no action to 'provide{} a focus for judicial review.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1906 (2020) (*quoting Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). Moreover, ***not*** creating a Section 318(a) duty holiday is "committed to agency discretion by law," and APA review of inaction is precluded. 5 U.S.C. § 701(a)(2). To be sure, Section 318(a) articulates cognizable limiting standards concerning, *e.g.,* what products are eligible for duty-free treatment, but it does not provide any "meaningful standard" against which to judge Commerce's *non*-adoption (or abandonment) of duty-free treatment. *Compare Chrysler Corp. v. Brown*, 441 U.S. 281, 317 (1979) ("difficult to derive any {limiting} standards" from "may prescribe regulations"), *with* 19 U.S.C. § 1318(a) ("regulations as {Commerce} may prescribe").

Outside the APA, an "unambiguously conferred right" is necessary, *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 375-376 (2025), but none is conferred by Section 318(a). Intervenors' duty-free treatment was a mere "administrative grace" by Commerce, *California Steel*, 48 F.4th at 1344, and even *Proclamation 10414* merely instructed

Commerce to "consider" action and expressly disclaimed the creation of any enforceable right or benefit, Appx234 (Proc.). Section 318(a) does not identify circumstances under which Commerce would be ***required*** (as opposed to merely permitted) to confer duty-free treatment. *See, e.g., Medina*, 606 U.S. at 378-379.

Regarding causation, Intervenors' alleged "injuries" are lawful AD/CVD tariffs arising out of Intervenor's own circumvention schemes. They are, in other words, "self-inflicted." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). Any challenge to the circumvention finding that caused Intervenors' imports to be in-scope lies under 28 U.S.C. § 1581(c), not here.

Finally, the alleged injuries are not redressable. The mandate has issued vis-à-vis the Government, which voluntarily dismissed its appeal. Order, ECF 36 (Feb. 2, 2026). Thus, the CIT's Judgment vacating the *Duty Suspension Rule* binds the Government, Appx111-Appx112 (Judgment); Appx5463 (Amendment), notwithstanding the stay of execution, *see* Appx5463 (Stay). *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398-402 (1981) (*res judicata* barred non-appealing party from benefiting from appeal). The Rule having been

abandoned, the Court cannot now compel its recreation. 5 U.S.C. § 706(1). "{T}he only agency action that can be compelled under the APA is action legally *required*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004). That "a decision might persuade actors who are not before the court" is constitutionally insufficient. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).

### III. The CIT Properly Found Subject Matter Jurisdiction over Plaintiffs' Case

In relevant part, 28 U.S.C. § 1581(c) confers jurisdiction to review Commerce's determinations "as to whether…merchandise is within the class or kind of merchandise described in an existing…{AD/CVD} order," including affirmative circumvention determinations under 19 U.S.C. § 1677j. 19 U.S.C. § 1516a(a)(2)(B)(vi). Far from challenging Commerce's determinations as to whether CSPV Products are within the class or kind described by the PRC AD/CVD Orders, Plaintiffs ***agree*** with them. Instead, Plaintiffs challenge Commerce's separate promulgation of an unlawful *Duty Suspension Rule*, which harmed Plaintiffs when Commerce used it to avoid applying enforcement regulations that required suspension of liquidation, collection of cash deposits, and assessment of duties. Because the true nature of

Plaintiffs' action concerns the administration and enforcement of Commerce's circumvention determinations—not the factual or legal conclusions underlying Commerce's determination as to whether CSPV Products are within the class or kind of merchandise described in the PRC AD/CVD Orders—the CIT correctly exercised subject matter jurisdiction under 28 U.S.C. § 1581(i).

### A. This Action's "True Nature" Challenges Duty Administration and Enforcement, Not Commerce's Determinations as to Whether CSPV Products Are Within the Class or Kind of Merchandise Described in PRC AD/CVD Orders

The Federal Circuit "look{s} to the true nature of the action" when determining whether jurisdiction lies under 1581(i). *Wanxiang Am. Corp. v. United States*, 12 F.4th 1369, 1374-75 (Fed. Cir. 2021). Here, as the CIT found, Plaintiffs' action challenges the *Duty Suspension Rule* promulgated in a purported exercise of Commerce's authority under Section 318(a). Appx45 (Op.); *see, e.g.,* Appx2516 (Compl.) ("contest{s} the final rule promulgated by" Commerce "under 19 C.F.R. Part 362 suspending the collection of antidumping and countervailing duties on entries of CSPV cells and modules found to be circumventing" the PRC AD/CVD Orders). Indeed, Intervenors concede that Plaintiffs challenge "implementation and enforcement." Br. at 25.

As the CIT found, the *Duty Suspension Rule* "by its terms states *explicitly* that Commerce will direct CBP to take certain actions with respect to the 'Applicable Entries' defined in section 362.102 and further states *explicitly* that these directions by Commerce to CBP are despite — not in furtherance of — Commerce's initiation of its circumvention inquiries and Commerce's final affirmative circumvention determinations." Appx46 (Op.); *see* 19 C.F.R. 362.103(b)-(c) (requiring non-enforcement of suspension of liquidation, cash deposits, and duty assessment at liquidation).

Following the *Duty Suspension Rule's* mandate, Commerce subsequently instructed CBP not to impose suspension, cash-deposit, and duty-assessment consequences that ordinarily follow an affirmative circumvention determination. *Compare* Appx609-645 (Prelim. CBP Instr.), 1448-1485 (Final CBP Instr.) (issued "pursuant to" the Rule), *with* 19 C.F.R. 351.226(l)(3) (noting that if Commerce "issues an affirmative final determination" it "***will direct***" CBP to continue suspension of liquidation and require cash deposits of estimated duties). But, as the CIT found, "Commerce's directions to CBP…do not alter in any respect Commerce's circumvention findings." Appx46 (Op.). Rather,

as Commerce's Final Circumvention Determinations confirmed, ***because of*** the Section 318(a) *Duty Suspension Rule* promulgated in response to Presidential Proclamation 10414, four separate "affirmative circumvention findings ***cannot be implemented***" until the Duty Suspension expires. *See* Appx843 (Cambodia), Appx1004 (Malaysia), Appx1173 (Thailand), Appx1336 (Vietnam). The "true nature" of this action therefore squarely concerns Commerce's inadequate "administration" and failure to "enforce{}" its affirmative circumvention determinations through unlawful instructions to CBP. *See* 28 U.S.C. § 1581(i).

Congress intended such "challenges {to} the manner in which Commerce administered the final results" to be reviewed under 1581(i). *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003) (further holding that "1581(i)(4) grants jurisdiction" over "an action challenging Commerce's liquidation instructions"); *see also Ugine and ALZ Belgium v. United States*, 551 F.3d 1339,1347 (Fed. Cir. 2009) ("*Ugine II*") ("If the party challenges the liquidation instructions issued by Commerce to implement a final order, review is available under 28 U.S.C. § 1581(i).") (rehearing and rehearing *en banc* denied). Consistent

with these authorities, the CIT correctly exercised jurisdiction under 1581(i).

### B. Section 1581(c) Jurisdiction Is Strictly Limited and Was Not Available

Intervenors contend that Plaintiffs "could have" brought this action under 1581(c). Br. at 18-26. This contravenes the statute's plain text, longstanding precedent, and Commerce's repeated characterizations of the *Duty Suspension Rule* as distinct from the Final Circumvention Determinations. Jurisdiction under 1581(c) encompasses only civil actions contesting "determinations" specifically enumerated in 19 U.S.C. § 1516a. The *Duty Suspension Rule* is not among those determinations. Thus, as the CIT held, jurisdiction under 1581(c) was not available. Appx52 (Op.).

#### 1. *The Duty Suspension Rule is Not a Determination Identified by 1516a*

Section 1516a defines the agency determinations reviewable under 1581(c). Relevant to circumvention inquiries, Congress authorized review only of Commerce's "determination…as to whether a particular type of merchandise is within the class or kind of merchandise" described in an order, 19 U.S.C. § 1516a(a)(2)(B)(vi), and the "factual findings or legal conclusions upon which ***the determination***

is based," *id.* § 1516a(a)(2)(A) (emphasis supplied). Plaintiffs have not challenged Commerce's determination of "whether" circumvention occurred. Rather, Plaintiffs ***welcomed*** Commerce's affirmative circumvention findings.

Indeed, had Commerce never determined these CSPV Products to be within the class or kind of merchandise described by the PRC AD/CVD Orders, the *Duty Suspension Rule* would likely not have harmed Plaintiffs. Appx2555-Appx2563 (Compl.). But Commerce ***did*** make such determinations. Because Commerce used the *Duty Suspension Rule* to block ***enforcement*** of those determinations, *see* Section III.A, *supra*, Plaintiffs sued to vacate the unlawful Rule and have Commerce and CBP ***administer*** the AD/CVD orders. *See* Appx2577-2578 (Compl.).

The CIT correctly recognized that "none of {the determinations listed in 1516a(a)(2)(B)} describes or encompasses the Duty Suspension Rule" and thus judicial review under 1581(c) was unavailable. Appx46-Appx47 (Op.). This is faithful to the boundary that Congress drew between "determinations" reviewable under 1581(c) and other enforcement issues reviewable under 1581(i). *See, e.g., Consolidated*

*Bearings*, 348 F.3d at 1002; *Ugine II*, 551 F.3d at 1347; *Shinyei Corp. of America v. United States*, 355 F.3d 1297, 1304 (Fed. Cir. 2004). The *Duty Suspension Rule's* non-enforcement mandates do not address whether merchandise is circumventing an order because it bars duty assessment under statutes ***beyond*** 1677j, and regardless of whatever "factual findings or legal conclusions" underlie any individual circumvention determination. 19 C.F.R. 362.103(a)-(c).

### *2. The Duty Suspension Rule Is Not Subsumed into a Determination Reviewable Under Section 1516a*

Intervenors' jurisdictional challenge hinges on treating the *Duty Suspension Rule* as "factual findings or legal conclusions upon which" Commerce's "determination {that CSPV Products are} within the class or kind of merchandise described in an existing…{AD/CVD} duty order" "is based." 19 U.S.C. §§ 1516a(a)(2)(A), (a)(2)(B)(vi); *see* Br. at 18-26. That is incorrect. As the CIT found, "Commerce's liquidation and collection instructions to Customs in the instant action as specified in the Duty Suspension Rule ***are inconsistent with*** Commerce's affirmative circumvention determinations as set forth in the Final Determinations." Appx50-Appx51 (Op.) (emphasis supplied).

Intervenors emphasize the various ways in which the Final Circumvention Determination discussed the *Duty Suspension Rule*. Br. at 19-25. But, as the CIT held, including such references "in the same document containing {both} Commerce's Final Determinations of circumvention {and} Commerce's liquidation and collection instructions to Customs is not determinative." Appx51 (Op.). To hold otherwise "would elevate form over substance rather than focus on 'the true nature of the action' before the court." Appx52 (Op.) (quoting *Wanxiang*, 12 F.4th at 1374-1375).

As the CIT reasoned, the jurisdictional inquiry turns on whether the challenged action itself is an enumerated determination—not whether it is mentioned the same document as one. *See Am. Signature, Inc. v. United States*, 2007 WL4224210 at *2 (Fed. Cir. 2007) (Unpublished) (finding 1581(i) jurisdiction and explaining the "mere fact that Commerce addressed the implementation of antidumping rates in its final determination does not make the implementation itself a reviewable determination under § 1516a."). The Federal Circuit has repeatedly held that 1581(i) encompasses challenges to customs or liquidation instructions or other measures governing the administration

of duties, even if these arise in connection with other determinations reviewable under Section 1516a. *See, e.g., Consolidated Bearings*, 348 F.3d at 1002; *Ugine II*, 551 F.3d at 1347. Such instructions "enforce{}" and "administ{er}" the administrative determination. 28 U.S.C. § 1581(i)(1)(D).

Moreover, Intervenors' fixation on Plaintiffs' arguments during Commerce's circumvention inquiries, *see* Br. at 18-25, is irreconcilable with Commerce's repeated characterizations of the *Duty Suspension Rule* and Final Circumvention Determinations as legally distinct actions arising from separate statutory authority. Within the circumvention inquiries, Commerce limited briefing to specified certification and implementation issues and barred arguments contesting the *Duty Suspension Rule*'s lawfulness. Appx647-648 (Admin. Brief Instructions). Yet, Commerce applied the *Duty Suspension Rule* to define whether duties would be collected, explaining that, because of the Rule, "***Commerce's affirmative circumvention findings cannot be implemented***." Appx843 (Cambodia), Appx1004 (Malaysia), Appx1173 (Thailand), Appx1336 (Vietnam) (emphasis supplied).

Having thus contrasted "affirmative circumvention findings" and their "implementation," Commerce again invoked the *Duty Suspension Rule* to withhold *ex parte* communications, characterizing that rulemaking proceeding as "distinct from" the circumvention inquiries. Appx879 (Cambodia), Appx1039 (Malaysia), Appx1209 (Thailand), Appx1377 (Vietnam). Thus, Commerce reasoned, it was "not required to memorialize for the record communications on matters distinct from the AD/CVD inquiries at hand, including *Presidential Proclamation 10414* or the rulemaking resulting from that Proclamation." *Id.*

Commerce's repeated characterizations during circumvention proceedings confirm the plain text of 1516a(a)(2)(B)(vi): Plaintiffs' do not challenge Commerce's determinations as to whether CSPV Products are within the class of merchandise described in existing AD/CVD orders. Instead, Plaintiffs challenge Commerce's instructions, pursuant to the *Duty Suspension Rule*, that CBP not enforce those determinations.

### C. *Shinyei* and *Ugine II* Confirm that 1581(i) Confers Jurisdiction over Plaintiffs' Enforcement Challenge

28 U.S.C. § 1581(i) supplies jurisdiction here. Contrary to Intervenors' assertion, Br. at 27, *Shinyei* and *Ugine II* are directly on

point. *Shinyei* held that 1581(i) jurisdiction lies where a plaintiff challenges Commerce's implementation of a determination through liquidation instructions, rather than the underlying determination itself. 355 F.3d at 1309. Subsequently, *Ugine II* stated that "if the party challenges the liquidation instructions issued by Commerce to implement a final order, review is available under 28 U.S.C. § 1581(i)." 551 F.3d at 1347. As these holdings reflect, where a plaintiff challenges how Commerce gives effect to its substantive determinations, *i.e.,* the administration and enforcement of AD/CVD laws, 1581(i) confers jurisdiction.

Applying that principle, Plaintiffs challenge the *Duty Suspension Rule* and instructions derived therefrom directing CBP not to suspend liquidation, collect cash deposits, or assess duties. The acts Plaintiffs challenge determined the (lack of) "administration and enforcement" of Commerce's affirmative circumvention determinations, placing Plaintiffs' challenge squarely within Sections 1581(i)(1)(B), (D). As the CIT correctly recognized, this case is like *Shinyei* because it concerns "Commerce's liquidation instructions and Commerce's failure…to order the collection of duties consistent with {its} findings." Appx50 (Op.).

Intervenors argue that *Shinyei* and *Ugine II* involved customs instructions that deviated from Commerce's determinations, whereas the instructions here were "embedded" in and consistent with the determinations. Br. at 26-30. To the contrary, "Section 516A is limited on its face to the judicial review of 'determinations'" and "enumerates specific reviewable determinations." *Shinyei*, 355 F.3d at 1309. Commerce's implementation of a determination through customs instructions or other enforcement measures is not a determination enumerated under 1516a and thus jurisdiction over such a challenge lies under 1581(i). *See Consolidated Bearings*, 348 F.3d at 1002 ("challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results"); *J.D. Irving, Ltd. v. United States*, 119 F.4th 48, 54 (Fed. Cir. 2024) (explaining that the *Consolidated Bearings* "appellant did not challenge or object to the final results; rather, it sought 'application of those final results'" and thus "1581(c) could not have been a source of jurisdiction").

Here, the external regulatory regime at issue presents an even stronger basis for 1581(i) jurisdiction than *Shinyei* or *Ugine II*. Rather

than challenging instructions that simply failed to effectuate Commerce's determinations, Plaintiffs challenge CBP instructions dictated by an unlawful regulation created through separate notice-and-comment proceedings outside the circumvention inquiry. In Commerce's words, its "affirmative circumvention findings ***cannot be implemented***" until the *Duty Suspension Rule* expired. *See* Appx843 (Cambodia), Appx1004 (Malaysia), Appx1173 (Thailand), Appx1336 (Vietnam) (emphasis supplied). Under *Shinyei* and *Ugine II*, challenging Commerce's failure to issue instructions effectuating its determinations is quintessentially a challenge to the administration and enforcement of the tariff laws and is only reviewable under Section 1581(i).

**D. Even Assuming 1581(c) Could Have Applied, Relief Would Have Been Manifestly Inadequate**

Even if Plaintiffs' claims were actionable under 1581(c), exercising jurisdiction under 1581(i) would remain proper because the remedies available under 1581(c) were manifestly inadequate in two ways.[4] *See, e.g.*, *Erwin Hymer Grp. N. Am., Inc. v. United States*, 930 F.3d 1370,

[4] The CIT found Auxin's separate 1581(c) challenges did "not contest the Duty Suspension Rule and the consequent liquidation instructions." Appx50 (Op.).

1375 (Fed. Cir. 2019). Section 1581(c) could not reach entries that the *Duty Suspension Rule* permitted to liquidate before the appellate window had opened. Also, Commerce viewed the administrative outcome as predetermined by the very regulation Plaintiffs challenge.

*First*, a challenge brought under 1581(c) could not have provided relief for a substantial portion of the *Duty Suspension Rule's* injury because determinations described in 1516a(a)(2)(B)(vi) cannot be appealed until the date that notice of the determination has been physically mailed. *See Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1349-51 (Ct. Int'l Trade 2019), *aff'd* 836 F.App'x 883 (Fed. Cir. 2020). Here, that was September 20, 2023. The *Duty Suspension Rule* facilitated liquidation by stopping suspension of liquidation. *See* 19 C.F.R. 362.103(b). Judicial review would be unavailable under 1581(c) for any entry liquidated duty-free prior to September 20, 2023. *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983).

Indeed, about 9,000 entries using the *Duty Suspension Rule* ***did*** liquidate. Appx4823 (Tr.).[5] While the precise timing is not public, statutory standards indicate that billions of dollars' worth of entries likely liquidated before September 20, 2023. *See* 19 U.S.C. § 1504(a)(1) (providing one-year window for liquidation by operation of law); Appx4815-4816 ($2.65 billion dollars' worth of circumventing CSPV imports from Cambodia, Malaysia, Thailand, and Vietnam entered between the April 1, 2022, initiation of circumvention inquiries and September 20, 2022). A 1581(c) challenge could not have addressed *Duty Suspension Rule* harms for liquidated entries, *Zenith*, 710 F.2d at 810, but a 1581(i) challenge could reach liquidated entries, *see* Section VII, *infra*.

*Second*, in circumvention proceedings, Commerce repeatedly asserted that it lacked power or discretion to implement its affirmative

---

[5] CBP is taking enforcement action against these liquidated entries for failing to satisfy *Duty Suspension Rule* prerequisites. *See* Appx4823 (Tr.). This may be relevant for analyzing relief, *see* Section VI.B.3-4, *infra*, but the adequacy of 1581(c) remedies is unchanged. CBP's *sua sponte* activity is a separate administrative process over which Plaintiffs have no control. Moreover, it was not publicly disclosed until June 2025, months after the deadline for 1581(c) action.

determinations because the *Duty Suspension Rule* precluded enforcement. *See* Section III.B.2, *supra*. Thus, because agency "regulation…'unmistakably' indicate{s} how it would determine the issue in dispute," challenging such determinations is "futile" and associated relief is "manifestly inadequate." *Int'l Customs Products, Inc. v. United States,* 467 F.3d 1324, 1328 (Fed. Cir. 2006) (citations omitted). Where, as here, the agency already concluded that a separate regulatory regime controls the outcome, forcing parties to challenge that predetermined outcome under 1581(c) is "manifestly inadequate."

Accordingly, even if some theoretical avenue for review were to exist under 1581(c), it was manifestly inadequate and exercising jurisdiction under 1581(i) was proper.

## IV. The CIT Correctly Held that the *Duty Suspension Rule* Exceeds Commerce's Authority Under Section 318(a)

Section 318(a) provides:

> Whenever the President shall by proclamation declare an emergency to exist by reason of a state of war, or otherwise, he…may authorize the Secretary of the Treasury[6] to permit, under such regulations as the Secretary of the Treasury may prescribe, the importation free of duty of food, clothing, and

[6] *Reorganization Plan No. 3 of 1979* reassigned the Secretary of the Treasury's role to the Secretary of Commerce. *See* 93 Stat. 1381, 1383.

> medical, surgical, and other supplies for use in emergency relief work.

19 U.S.C. § 1318(a). Applying traditional tools of statutory construction, the CIT correctly found that Section 318(a) does not authorize duty-free importation of CSPV Products. Appx96.

### A. Section 318(a) Delegates Congressional Taxing Authority; This Court Must Interpret the Extent of that Delegation

The Constitution "specifies that 'The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises.'" *Learning Res., Inc. v. Trump*, 607 U.S. 229, 240 (2026) (quoting U.S. Const. Art. 1, §8, Cl.1). "The power to impose tariffs is 'very clear{ly}...a branch of the taxing power.'" *id.* at 240-241 (quoting *Gibbons v. Ogden*, 9 Wheat. 1, 201 (1824)). The Supreme Court emphasized—the Constitution "did not vest ***any part*** of the taxing power in the Executive Branch." *Id.* at 241 (emphasis supplied).

Section 318(a) must be interpreted within these constitutional confines. This underscores the correctness of the CIT's measured, text-focused reading, and vitiates Intervenors' alternative, which would empower the President to prevent Congress from raising revenue through tariffs, so long as he proclaimed an expansive enough

emergency "by reason of a state of war, or otherwise." 19 U.S.C. § 1318(a).

Specifically, Intervenors assert that "Section 1318 permits the President to waive duties on ***any item*** that ameliorates a validly declared emergency—including in this case, solar modules." Br. at 34-35 (emphasis supplied). To ground their expansive reading, Intervenors rely on a series of passages from *Field*. Br. at 32-33 (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649 (1892)). Tellingly, identical observations, and many of the same quotes, were employed by the *Learning Resources* **dissent**. *See* 607 U.S. at 325-327 (Thomas, J., dissenting). Clearly, that alternative version of "historical practice and precedent," *id.* at 325, or "legislative tradition," Br. at 33, did not persuade the Supreme Court or alter the Constitutional baseline from which the analysis must proceed, *see id.* at 240-242.

Indeed, *Learning Resources* rejected Intervenors' key premise, *viz.*, that potentially broad terms in an emergency statute must expand to meet the needs of whatever scenario a President might label an emergency. *See* Br. at 35-37, 48-49. Regarding emergency authority over tariffs specifically, the Supreme Court reasoned that "it simply

does not follow from the fact that a statute deals with major problems that it should be read to delegate all major powers for which there may be a 'colorable textual basis.'" 607 U.S. at 248 (quoting *West Virginia v. EPA*, 597 U.S. 697, 722 (2022)).

Furthermore, contrary to Intervenors' efforts to paint Section 318(a) as purely beholden to Presidential prerogative, the statute does not permit "the President to waive duties" at all. *See* Br. at 34-35. The President's statutory role is expressly limited to "procla{iming}" an emergency and "***authoriz{ing} the Secretary {of Commerce}*** to permit" certain duty-free importation. 19 U.S.C. § 1318(a). As Intervenors recognize, the emergency proclamation itself is not before the Court, Br. at 34, and the President otherwise merely directed Commerce to "consider" further action, Appx234 (Proc.).

Nevertheless, Intervenors ask this Court to hold that Section 318(a) empowers the President to define the statutory term "other supplies" simply by reference to whatever he believes may relieve whatever type of emergency he proclaims. *See* Br. at 34-35. Unlike Section 318(a), when Congress delegates interpretive authority, it does so explicitly. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394-

395 & n.5 (2024) (providing examples like "unemployment (as determined in accordance with standards prescribed by the Secretary)"). Thus, this Court cannot abdicate its "province and duty" under Article III of the Constitution to "recogniz{e} constitutional delegations {and} fix{} the boundaries of the delegated authority" by reference to the statute's "single, best meaning." *Id.* at 395 (first quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)), 400 (cleaned up).

### B. As the CIT Held, Section 318(a) Does Not Authorize Duty-Free CSPV Products

The CIT faithfully applied the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning…at the time Congress enacted the statute.'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)); Appx84. Indeed, "{t}hat is the whole point of having written statutes; 'every statute's meaning is fixed at the time of enactment.'" *Loper*, 603 U.S. at 400.

### *1. The Analysis Does Not Stop at the Dictionary Definition of Isolated Words or Broad Appeals to Policy*

The CIT and all parties agree, dictionaries contemporaneous with a statute's enactment may inform interpretation of individual terms and, for present purposes, *Webster's New International Dictionary*, Unabridged (2d ed. 1934) ("*Webster's*") is the best source. *See, e.g.*, Appx85 (Op.); Br. at 35-36; *MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 228 (1994) ("In 1934, when the Communications Act became law—the most relevant time for determining a statutory term's meaning—Webster's Third was not yet even contemplated") (internal citations omitted).

In particular, the present appeal requires interpretating this statutory clause:

> the importation free of duty of food, clothing, and medical, surgical, and other supplies for use in emergency relief work.

The CIT and all parties agree that the ordinary and contemporary meanings of "food," "clothing," "medical…supplies," or "surgical…supplies" do not encompass CSPV Products. Br. at 34. Thus, the precise dispute is whether CSPV Products are encompassed by the concluding term of the following list: "medical, surgical, and <u>other supplies</u>."

Considering this, the CIT first defined "other" and "supply" by consulting *Webster*'s, then merged those two definitions into "provisions or materials dispensed to fill a need, which are distinct from, or additional to, the 'medical' or 'surgical' supplies already mentioned" as "other supplies." Appx86 (Op.). Intervenors argue the analysis should end here, because a standalone dictionary understanding broadens authority to alleviate emergency scenarios. Br. at 35-36. But the Supreme Court has precluded Intervenors' short-circuited approach, holding, "at a minimum," statutory construction "must account for a statute's full text, language as well as punctuation, structure, and subject matter," not stop at "isolated words." *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993).

Troublingly, moreover, the self-defining emergency authority Intervenors posit "would tend to kindle emergencies." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 652 (1952) (Jackson, J., concurring). Even Congress' "broad{} concern" cannot override "narrow statutory design," *Facebook, Inc. v. Duguid*, 592 U.S. 395, 408 (2021), and because "our system does not permit agencies to act unlawfully

even in pursuit of desirable ends," *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021), supplanting statutory text with bare purpose cannot save Commerce's *Duty Suspension Rule*.

Ultimately, "only the words on the page constitute the law adopted by Congress and approved by the President." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). Thus, unwritten purpose cannot excuse the Court from rigorous textual interpretation. *See Bank of Oregon*, 508 U.S. at 455. Here, interpretive canons do not "le{a}d to a linguistically impossible or contextually implausible outcome," *Facebook*, 592 U.S. at 406-407, and they uniformly counsel against the expansive, circular reading promoted by Intervenors.

***2. Interpretive Canons Uniformly Favor Reading of "Other Supplies" to Exclude CSPV Products***

"In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Here, reading "other supplies" as something akin to "medical" supplies and "surgical" supplies is supported by grammar and punctuation, *noscitur a sociis*, and *ejusdem generis*. By contrast, Intervenors' broad reading is resisted by the rule

against surplusage, *expressio unius*, the "Elephants in Mouseholes" canon, the Major Questions Doctrine, and the Tariff Act of 1930's overarching structure.

*i. Grammar, Punctuation, Noscitur a Sociis, and Ejusdem Generis Favor a Measured Reading*

"{T}he meaning of a statute will typically heed the commands of its punctuation." *Oregon*, 508 U.S. at 454; *see also United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989) (citing comma setoff to interpret statute). Here, "other supplies" comes at the end of a three-part list set off by a comma and the word "and"—"and medical, surgical, and other supplies." Further, "{t}he rules of grammar apply in statutory construction," *Anhydrides & Chemicals, Inc. v. United States*, 130 F.3d 1481, 1483 (Fed. Cir. 1997); *Nielson v. Preap*, 586 U.S. 392, 407-08 (2019) ("{w}ords are to be given the meaning that proper grammar and usage would assign to them."), and the concluding term "supplies" is necessary to make grammatical sense of "medical," "surgical," and "other" (but not "food" or "clothing"), further confirming the tripartite nature of this list. The parallelism of the three-part list is cemented by the fact that "medical…supplies" and "surgical…supplies" are each defined by their field of application, unlike "food" or "clothing."

As the CIT explained, *noscitur a sociis* and *ejusdem generis* likewise "point{} to a reading of 'other supplies' that is narrower than 'provisions or material dispensed to fill a need, which are distinct from, or additional to, 'medical' or 'surgical' supplies." Appx89 (Op.). *Noscitur a sociis* instructs that "a word is known by the company it keeps," and directs the court to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).

The "company" kept by the term "other supplies" is established by Section 318(a)'s punctuation and grammar. Thus, "other supplies" should not be ascribed a term "so broad that it is inconsistent with" medical supplies and surgical supplies. *Gustafson*, 513 U.S. at 575. This reading of "a word {that} is capable of many meanings {will} avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961).

*Ejusdem generis* reinforces *noscitur a sociis* where, as here, a word having a broad dictionary definition concludes a list. "{W}here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature

to those objects enumerated by the preceding specific words." *Wash. St. Dept. of Social and Health Servs. v. Guardianship Est. of Keffeler*, 537 U.S. 361, 384 (2003); *see also, e.g., Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1789 (2022) (same, considering "any common attribute{s} shared by the specific items.").

Here, *ejusdem generis* counsels that "other supplies" be something akin to the preceding terms—medical supplies and surgical supplies. This ensures that the "general term is confined to covering subjects comparable to the specifics it follows." *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008), and is hardly "self-defeating," contrary to Intervenors' hyperbolic claims, Br. at 44-45.

*ii. The Rule Against Surplusage, Expressio Unius, the "Elephants in Mouseholes" Canon, Major Questions Doctrine, and Statutory Context Disfavor Intervenors' Broad Reading*

Canons favoring a measured reading of "other supplies" are separately reinforced by interpretive tools that disfavor reading "other supplies" as permitting duties to be waived "on ***any item*** that ameliorates a validly declared emergency—including in this case, solar modules." Br. at 34-35 (emphasis supplied).

As a preliminary matter, Intervenors misconstrue the postpositive modifier "for use in emergency relief work" in attempting to bootstrap "other supplies." *See, e.g.*, Br. at 37. "When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Paroline v. United States*, 572 U.S. 434, 447 (2014) (quoting *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920)). Here, "use in emergency relief work" is a precondition to duty-free treatment that limits *all* products named by Section 318(a), paralleling the emergency proclamation that must precede "authoriz{ation}" of duty-free treatment.

The Supreme Court has repeatedly rejected using postpositive modifiers to vastly expand the meaning of a concluding term. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 114–15 (2001) ("any other class of workers engaged in…commerce" remained constrained by preceding list, *e.g.*, "seamen" and "railroad employees"); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 512 (2018) ("other concerted activities for the purpose of…other mutual aid or protection" remained constrained by

preceding list, *i.e.*, "assist{ing} labor organizations" and "bargain{ing} collectively").

Additional canons disfavor Intervenors' interpretation. *First*, the rule against surplusage instructs courts to "give effect, if possible, to every clause and word of a statute." *Advoc. Health Care Network v. Stapleton*, 581 U.S. 468, 477 (2017). This avoids reading "other supplies" to nullify Section 318(a)'s references to "food, clothing, and medical, surgical…supplies." If "other supplies" could ultimately encompass "any item," Congress' list of specific products has no independent effect.

*Second*, where items in a statutory list "are members of an 'associated group or series,'" the expression of one thing (*i.e.*, food, clothing, medical supplies, and surgical supplies) "justif{ies} the inference that items not mentioned were excluded by deliberate choice, not inadvertence" (*e.g.*, petrochemicals, rolling stock, or machinery for producing electricity). *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Reading "other supplies" as "any item" treats Congress' list of specific products as mere happenstance.

*Third*, as the CIT reasoned, Appx91 (Op.), "Congress…does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not…hide elephants in mouseholes," *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). Commerce "must show a textual commitment of authority" and it "must be a clear one." *Id.* This further discourages Intervenors' elephant-sized reading of "other supplies," which would allow Commerce, once "authorize{d}," to permit duty-free treatment of any article related to whatever emergencies "by reason of a state of war, or otherwise" were proclaimed. This would jeopardize all U.S. customs duties—including injured U.S. industries' hard-won AD/CVD relief.

For the same reason, Intervenors' reading of Section 318(a) implicates the "major questions" doctrine. *Learning Resources* applied this to reject reading IEEPA's authority to "regulate…importation" as encompassing tariff-making. *See* 607 U.S. at 242-248. Here, likewise, "constitutional structure and common sense" counsel "skepticism" and "with particular force" because "the purported delegation involves the core congressional power of the purse." *Id.* at 243. The amount of ordinary customs and AD/CVD revenue implicated by Intervenors'

broad reading easily meets the "billions of dollars in compliance costs" found so "economic{ally} and political{ly} significan{t}" as to warrant "hesitation." *Compare* 607 U.S. at 246, *with* "Trade Statistics," *cbp.gov* (last modified Aug. 3, 2026), *available at* https://perma.cc/946N-YEAP (excluding Sections 232 and 301 tariffs, $48 to $58 billion dollars' worth of duties collected annually between 2022 and 2024).

As Section IV.B.2.i explains, many indicators narrow "other supplies" to a mousehole, *Whitman*, 531 U.S. at 368, *i.e.*, a grant of tariff authority that, like Congress' other delegations, is "subject to strict limits," *Learning Resources*, 607 U.S. at 244. The "textual commitment of authority" is not "a clear one." *Whitman*, 531 U.S. at 468; *Learning Resources*, 607 U.S. at 248.

*Finally*, the whole of the Tariff Act of 1930 resists a broad reading of Section 318(a).[7] "{L}ook{ing} to other provisions of the Tariff Act at the time the {provision at issue} was enacted" can assist the Court "{t}o understand these statutory criteria." *Adee Honey Farms v. United States*, 107 F.4th 1322, 1332 (Fed. Cir. 2024); *see also United States v.*

[7] Congress never altered the text of present-day Section 318(a). *See* Tariff Act of 1930, Pub.L. 71-361, § 318, 46 Stat. 590, 696.

*Turkette*, 452 U.S. 576, 589 (1981) (referring to declared statutory purpose and structure of Titles to interpret provision). It is a "lengthy and detailed law, consisting of nearly 200 pages of specific duty rates on thousands of enumerated goods" including a 35 percent duty for "{a}ll articles suitable for producing…electrical energy." Appx91 (Op.) (citing 46 Stat at 618). Congress was manifestly aware of imported goods beyond "food, clothing, and medical, surgical, and other supplies." *Cf. Robers v. United States*, 572 U.S. 639, 639 (2014 ("Generally, identical words used in different parts of the same statute are…presumed to have the same meaning."). Section 318 is a "Miscellaneous" provision of the "Special Provisions" subtitle—a single paragraph between a duty-free tobacco export provision and another empowering Puerto Rico's Legislature to impose duties upon coffee. 46 Stat. at 696. The CIT reasonably found the Act's structure and overarching purposes to "provide revenue," "regulate commerce," "encourage the industries of the United States," and "protect American labor," 46 Stat. at 590, incompatible with the notion that Congress intended every line of its intricate tariff system to be one emergency "authoriz{ation}" away from nullification. *See* Appx91-Appx92 (Op.).

### *iii. A Measured Reading of "Other Supplies" Comports with Intervenors' Proffered Authorities*

Intervenors argue that "other supplies" cannot be read to render "general words meaningless," Br. at 50 (citing *United States v. Alpers*, 338 U.S. 680, 682 (1950)), without explaining how supplies like medical and surgical supplies is "meaningless." Intervenors merely nitpick the CIT's examples, claiming that each could be construed as "medical," *i.e.*, "pert{aining} to, or dealing with the healing art." *See id.* at 50 (quoting *Webster's*). But Intervenors selectively omit part of *Webster's* definition: "Esp{ecially} in the narrower sense; as, the medical profession; medical services." Appx2010 (*Webster's*); Appx85 (Op.) (quoting same). In this "narrower sense," hospital beds or non-prescription pharmaceuticals deployed to promote population health by disaster relief personnel lacking medical training might not be "medical" supplies, but they would be similar. Bedsheets and pillows, among other products, could also fall within the CIT's understanding of "other supplies." Such articles are sometimes used in strictly "medical" or "surgical" contexts, but can assist in maintaining good health even outside those professional settings.

Second, Intervenors cite *Field* for the proposition that Congress can empower a President to suspend enforcement of a statute "upon a named contingency." Br. at 46 (citing *Field*, 143 U.S. at 693). Here, however, Commerce is the actor at issue. Regardless, Section 318(a)'s list of eligible products is a "named contingency" that was not satisfied. Indeed, *Field* considered a statute likewise pertaining to named products—"sugar, molasses, coffee, tea, and hides"—and the President was found to "ha{ve} no discretion…except to the duration of the suspension {of preferential duty treatment} so ordered." 143 U.S. at 692-693. CSPV Products were equally outside Congress' delegation of power in *Field* as in Section 318(a).

Finally, Intervenors endeavor to distinguish *Yates*, which the CIT referenced. Br. at 51 (discussing *Yates v. United States*, 574 U.S. 528 (2015)). This misses the point. The validity of the interpretive framework described in Sections IV.B.2.i-ii, *supra*, does not require factual similarity between *Yates* and this case, nor were *Yates'* interpretive principles confined to criminal law issues.

None of Intervenors' critiques undermine the CIT's interpretive conclusions.

*iv. CSPV Products Do Not Fall Within a Measured Reading of "Other Supplies"*

Reading "Other Supplies" consistent with the foregoing interpretive canons, as the CIT did, the phrase encompasses articles like "medical…supplies" and "surgical…supplies." Intervenors do not argue that this understanding of "other supplies" would encompass CSPV Products. Plainly, it would not.

Because CSPV Products were not invented until 1954, *see* Appx5025-Appx5050 (Prelim. Inj. Mtn.), Congress in 1930 could not possibly have considered them to share meaningful attributes with "medical…supplies" and "surgical…supplies" of the day. Whereas Congress listed predecessor items for energy generation elsewhere in the Tariff Act of 1930, *see* 46 Stat. at 618, none appeared in Section 318. Considering what Section 318(a) says (and does ***not*** say), *see Barnhart*, 537 U.S. at 168, Congressperson presented with a utility-scale CSPV module and surgical scalpel would be hard-pressed to "spot the similarity." In context, the "best meaning" of "other supplies" is that—like "medical" supplies and "surgical" supplies, which are both defined by their use—Congress simply intended to capture other items used in healthcare applications.

## C. Other Sources Are Not Controlling, But None Contradict the CIT's Interpretation

### *1. Legislative History Contains No Meaningful Commentary*

"Because the text yields a clear answer, {the Court} need not consider legislative history." *Adee Honey*, 107 F.4th at 1334; *see Milner v. Dep't of Navy*, 564 U.S. 562, 574 (2011) ("Legislative history…is meant to clear up ambiguity, not create it"). Nonetheless, as the CIT recognized, the limited legislative history does not support a different reading of Section 318(a). *See* Appx93 (Op.).

Specifically, the House Ways & Means Committee comparative print of H.R. 2667 and Tariff Act of 1922 juxtaposes the 1922 Tariff Act as only "authoriz{ing} the extension of time limitations" during a Presidentially proclaimed emergency, noting that Section 318 of the 1930 Tariff Act was "broadened to {also} permit the free importation of food, clothing and supplies for use in relief work in connection with any such emergency…." Appx2003. So, it simply acknowledges that the duty-free import clause is new to the 1930 text. This offhanded paraphrase cannot override the statutory text signed into law. *See* Appx2002-Appx2003 (text identical to enacted statute).

More recently, Congress explicitly rejected Commerce's attempt to widen Section 318(a) under the Congressional Review Act. Appx2511-Appx2512 (H.J. Res. 39 (2023)).

### 2. *Past Practice Confirms Measured Use of Section 318(a)*

Clear statutory text likewise eliminates the need to parse agency practice, as "historical practice, detached from statutory text, is not controlling." *Watson v. Republican Nat'l Comm.*, 2026 WL 1855462, at *8 (2026). Moreover, only agency "reasoning" with the "power to persuade" is useful. *Loper*, 603 U.S. at 388 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Under Section 318, agencies generally offered no separate explanation for their interpretations.

#### *i. Contemporaneous Practice Echoes the Statutory Language; the Court Should Disregard Intervenors' Untimely New Arguments and Information*

Agency practice "roughly contemporaneous{} with enactment of the statute" is strongly preferred. *Loper*, 603 U.S. at 386. Here, as the CIT found, such practice overwhelmingly favors a measured reading. Early proclamations authorizing duty-free imports either employed the statutory language directly, or named goods falling squarely within Section 318's plain meaning, *i.e.*, food for animals or humans. Appx94-Appx95 (Op.) (discussing *Proclamation 2093: Free Importation of Feed*

*for Livestock*, Appx2018-Appx2019; *Proclamation 2223: Free Importation of Food, Clothing, and Medical, Surgical, and Other Supplies for Use in Emergency Relief Work*, Appx2025-Appx2026; *Proclamation 2498: Free Importation of Forage for Livestock*, Appx2030; *Proclamation 2545: Free Importation of Jerked Beef*, Appx2040; *Proclamation 2553: Free Importation by the American National Red Cross of Food, Clothing, and Medical, Surgical, and Other Supplies*, Appx2043).

Plaintiffs' CIT opening brief discussed all foregoing examples of prior practice. *See* Appx5332, Appx5338 (Pl. R.56.1 Br.). Intervenors thus had every opportunity to address these issues below; yet, Intervenors now offer a variety of completely new arguments and materials that were never presented during CIT proceedings. *See* Br. at 37-42. "{N}ew arguments will not be decided in the first instance on appeal." *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008). The Court should disregard these.

Regardless, Intervenors' untimely new materials come exclusively from non-governmental organizations and none addresses whether Section 318 duty-free treatment was used. *See* Br. at 37-42. Intervenors

otherwise newly argue that a 1937 Proclamation authorizing duty-free treatment for "such food, clothing, and medical, surgical, and other supplies as {the Secretary} may designate" expanded Section 318's reach, *see id.* at 40 (citing Appx2029), but the designation ("such") applied to *all* statutory product categories and the Secretary's implementation just repeated the statutory terminology, *see* Appx2029 (No. 2223). At most, this is inconclusive, not evidence that Section 318(a)'s plain text was overridden.

*ii. Later Practice Is Distinguishable*

Intervenors otherwise emphasize agency practice from 16 years (1946) and 76 years (2006) after Section 318's enactment. *See* Br. at 42-44. Neither is remotely "contemporaneous with enactment of the statute," *see Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 399 (Fed. Cir. 1990) (questioning contemporaneity of interpretation nearly four years after enactment), nor are they "consistent" with earlier examples. *Loper*, 603 U.S. at 386. Moreover, both are distinguishable.

As the CIT recognized, the 1946 proclamation authorizing duty-free importation of lumber for housing relied on additional statutory authority, the Veterans' Emergency Housing Act of 1946 ("VEHA").

Appx95 (Op.) (citing *Proclamation 2708: Emergency Due to Housing Shortage—Free Importation of Timber, Lumber, and Lumber Products*, Appx155; Pub.L. 79-388, §1(b), 60 Stat. 207, 208, Appx2049). Duty-free treatment would automatically terminate no later than the VEHA and the VEHA's "Housing Expediter" was empowered to "designate{} and certify{y}" eligible goods. *Id.* (citing Appx155 (Proc. 2708)). Intervenors downplay the VEHA, Br. at 43, but by its own terms Proclamation 2708 was inert absent the VEHA, *see* Appx155. Moreover, the VEHA instructed that "executive agencies of the Government shall exercise their emergency powers…for the purpose of aiding in the solution of the problems created by the existing housing emergency," Pub.L. 79-388, §2(c), Appx2050, a *sui generis* grant of authority understood as temporarily widening Section 318.

Commerce has never used its 2006 regulations. *See Procedures for Importation of Supplies for Use in Emergency Relief*, Appx156-Appx161; Br. at 44. Nor did Commerce explain how applying traditional tools of construction to the statutory text supports its preambular position. *See* Appx159 (2006 Regs.). In any case, rejecting the need for a

more granular list of potentially eligible products does not amount to going outside Congress' named product categories. *See id.*

## V. Intervenors' *Post Hoc* Rationale for Commerce's *Duty Suspension Rule* Fails

Advancing an alternative the Government never embraced, Intervenors argue that Commerce could enact the *Duty Suspension Rule* as 19 U.S.C. § 1677j rulemaking. Br. at 51-55. By contrast, the Code of Federal Regulations identifies the "authority" for the Rule as "19 U.S.C. § 1318; Proc. 10414," 19 C.F.R. Part 362, and the Duty Suspension Rule's scope is defined as "actions {Commerce} is taking to respond to the emergency declared in Presidential Proclamation 10414," 19 C.F.R. 362.101, which instructed Commerce to "consider taking appropriate action under section 1318(a)," Appx234. Given these obvious disconnects, the Government avoided supporting Intervenors' theory. *Compare* Appx5371-Appx5389 (Gov't Resp. Br.), *with* Appx5440-Appx5444 (Int. Resp. Br.); *see also* Appx4828-Appx4831 (Tr.) (not raising argument).

The NEA prohibits using "powers or authorities made available by statute for use in the event of an emergency…unless and until the President specifies the provisions of law under which he proposes

that…other officers will act." 50 U.S.C. § 1631. *Proclamation 10414* directed Commerce solely to "consider taking appropriate action under section 1318(a)," not 1677j. Appx234 (Proc.). Thus, even assuming 1677j could authorize emergency response, no such power was made available to Commerce here. *Applicability of the Nat'l Emergencies Act to Statutes That Do Not Expressly Require the President to Declare A Nat'l Emergency*, 2016 WL 10590109, at *9 (O.L.C. Aug. 24, 2016) ("the NEA applies to any statute conferring powers and authorities to be exercised during a national emergency").

Relatedly, because "{t}he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based," *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943), "{t}he courts may not accept appellate counsel's *post hoc* rationalizations for agency action," *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). Simply, "the court, is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Accordingly, Intervenors' *post hoc* rationalizations must fail here.

Implicitly recognizing this barrier, Intervenors attempt to reinvent administrative proceedings as if the *Duty Suspension Rule* were, contrary to its own stated scope and authority and the vast weight of preambular discussion, an exercise of 1677j rulemaking. *See* Br. at 52-55. But the catch-all "invo{cation}" Intervenors muster does not articulate an agency view that 1677j, standing alone, could authorize the Rule. *See id.* at 54-55.[8] "It is not the role of the courts to speculate on reasons that might have supported an agency's decision," *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016), especially reasons the Government itself eschewed.

Regardless, as standalone 1677j rulemaking, the Rule remains unlawful. That statute never contemplates Commerce "respond{ing} to the {Section 318(a)} emergency declared in the Proclamation" or permitting duty-free importation of "food, clothing, and medical, surgical, and other supplies" for that purpose. *Compare* 19 U.S.C. § 1677j(b), *with id.* § 1318(a), *and* Appx315 (Rule). More generally, 19

---

[8] Commerce's analysis was simply that retrospective duty assessment "as it relates specifically to circumvention proceedings under section {1677j}, is authorized by Commerce's {circumvention} regulations." Appx322-Appx323.

C.F.R. 362.103(a) purports to permit "importation…free of collection of antidumping and countervailing duties and estimated duties under sections {1671}, {1673}, {and 1675}"—which is manifestly *ultra vires* Section 1677j.

Attempting to supply missing explanation, Intervenors point to the term "may" in 1677j(b)(1), Br. at 52, but that relates to the "inclu{sion of} such imported merchandise within the scope of such order," 19 U.S.C. § 1677j(b)(1). It does not contemplate *ad hoc* carve-outs to the suspension of liquidation, cash deposit, and duty assessment for products that Commerce has already included within the scope. *See* Section III.B.1, *supra* (distinguishing scope determination from AD/CVD enforcement).

Commerce respected this distinction. It first determined that "merchandise is covered by the Orders," making no exception for Duty Suspension entries, Appx1434 (Final Circ. Det.), and invoked the *Duty Suspension Rule* only as a basis for modifying suspension, cash deposit, and duty treatment of certain entries, Appx1435; *see also* Appx321 (Rule) (acknowledging that goods are "not actually…covered by the order* **until** *Commerce makes an affirmative circumvention

determination”). Commerce expressly confirmed that its *Duty Suspension Rule* “certifications do not redefine the scope of the *Orders* or inquiry merchandise.” Appx850 (Cambodia), Appx1011 (Malaysia); Appx1181 (Thailand); Appx1349 (Vietnam).

An agency only has the power to act when “Congress confers power upon it.” *La Pub. Serv. Comm’n v. FCC*, 476 U.S. 355, 374 (1986). Plaintiffs need not identify language that “preclude{es} the approach that Commerce took.” Def.-App. Br. at 55. “It is indeed well established that the absence of a statutory prohibition cannot be the source of agency authority.” *FAG Italia S.pA. v. United States*, 291 F.3d 806, 816 (Fed. Cir. 2002). Section 318(a) is the authority for Commerce’s *Duty Suspension Rule*, but 1677j could not have empowered the Rule either.

**VI. The CIT’s Relief Order Was Not an Abuse of Discretion**

“To buttress the appropriateness of a liquidation order,” the CIT analyzed whether Plaintiffs had “demonstrate{d} that: (1) ‘it has suffered an irreparable injury’; (2) ‘remedies available at law, such as monetary damages, are inadequate to compensate for that injury’; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) ‘the public interest

would not be disserved by a permanent injunction.'" Appx101-Appx102 (quoting *eBay*, 547 U.S. at 391); *see also* Appx102-Appx108 (Op.). The CIT observed that it "has not engaged in the same equitable factor analysis when ordering liquidation," Appx101 (Op.), but nevertheless concluded here that Plaintiffs satisfy "each of the four factors" with respect to a liquidation order. Appx108. "With respect to a potential reliquidation order," three factors favor Plaintiffs and one weighs equally between Plaintiffs and Intervenors, such that the balance of equities "warrants reliquidation." Appx108 (Op.).

On appeal, as below, it is undisputed that the second factor—the absence of legal remedies against the party that committed the asserted wrong, *i.e.*, the government—favors injunctive relief. Appx104-Appx105; *Oman Fasteners*, 125 F.4th at 1089. Intervenors challenge the CIT's analysis of the remaining three factors. *See* Br. at 56-74. The CIT did not abuse its discretion. The Court should sustain the CIT's relief order and reject Intervenors' bid to preclude meaningful relief.

### A. The CIT's Irreparable Harm Finding Was Not Clearly Erroneous

Intervenors' argument is premised upon the liquidation of entries without AD/CVD assessment being irrelevant to Plaintiffs' future harm. *See* Br. at 56. Intervenors assert that the CIT relied solely on "past

harms." *Id.* at 56-61. These arguments fundamentally misconstrue how customs duties are assessed.

### *1. Intervenors Waived Arguments That Were Never Raised Below*

Challenges to evidence of irreparable harm are "not well-taken" where the evidence "stands unrebutted." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011). Here, any effort to rebut Auxin's evidence of harm is untimely. *See, e.g.*, Br. at 59. Auxin sought an injunction and repeatedly claimed the Duty Suspension Rule caused it harm. *See, e.g.*, Appx2577-Appx2578, Appx3649-Appx3663 (Complaint); Appx5345-Appx5346 (Pl. CIT Br.); Appx5290-Appx5291 (Pl. Proposed Order). Despite this, Intervenors never challenged Auxin's affidavits and declarations of fact concerning the impact of Duty Suspension imports on Auxin's business, *see, e.g.*, Appx5446-Appx5452 (Int. Resp. Br.), even during an oral argument that focused almost exclusively on questions of harm, *see* Appx5460-Appx5461 (Oral Arg. Qs.). Appellate courts "only rarely" will entertain "evidence and issues...not properly raised in proceedings below," *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1326 (Fed. Cir. 2001), thus Intervenors' belated evidentiary challenges should be deemed waived.

More generally, whereas the CIT ordered relief materially identical to Plaintiffs' request, *compare* Appx111-Appx112 (Judgment), *with* Appx5290-Appx5291 (Pl. Proposed Order), Intervenors' "past harms" challenge to irreparable harm is a substantial reinvention of their CIT arguments. The foundational cases cited in Intervenors' appellate brief appear nowhere in either CIT response brief, despite Plaintiffs having requested an injunction, Defendant having challenged irreparable harm, and Intervenors having had an additional three weeks thereafter to prepare their supporting brief. *Compare* Br. at 57-59, *with* Appx5290-Appx5291 (Pl. Proposed Order); Appx5356-Appx5359 (Def. Resp. Br.); Appx5411-Appx5412 (Int. Resp. Br.). Nor did Intervenors raise these cases or argue that "past" harm was *per se* ineligible for injunctive relief during oral argument. *See, e.g.*, Appx4849-Appx4853, Appx4859, Appx4864 (Tr.).[9] Thus, the Court should deem waived Intervenors' belated arguments concerning "past harms" as limiting injunctions. *See, e.g.*, *Viskase*, 261 F.3d at 1326.

---

[9] *COALITION* and certain standing cases were raised in support of an unsuccessful standing challenge that Intervenors have dropped on appeal. *Compare* Appx5419-Appx5423 (Int. Resp. Br.), *with* Br. at 60-61.

### *2. Intervenors Misconstrue the Liquidation Process; the CIT Identified Present Harm*

If considered, Intervenors' arguments fail to establish clear error. The CIT found that Plaintiffs have a competitive interest in AD/CVD duty assessment at liquidation and that Auxin had adduced evidence of economic harm, including price erosion and lost business opportunities, caused by unlawful duty-free treatment of circumventing CSPV Product imports. Appx103-Appx104 (Op.). Intervenors theorize that because the emergency period had concluded, the CIT's order addressed only past harm. Br. at 57-61. Intervenors' argument contradicts Federal Circuit precedent, Intervenors' own comments on the proposed *Duty Suspension Rule*, their own post-judgment affidavits, and the law governing customs duty assessment. The CIT did not abuse its discretion in finding irreparable harm.

Although Intervenors brandish the term "retroactive" like a magic talisman, *e.g.*, Br. at 57, it is inapt here. For nearly 100 years, determining U.S. customs duty liability has been a multi-step process: *First*, after importation, products "enter" based on estimated duty payments, *e.g.*, 19 U.S.C. § 1484; *second*, U.S. customs authorities may further scrutinize the entry, *e.g.*, *id.* § 1499; and *third*, final duty

assessment and "liquidation" occur at some later date, *e.g.*, *id.* § 1505(b). Thus, as Canadian Solar's and BYD's comments on the proposed Duty Suspension Rule acknowledged, "{p}rior to liquidation by CBP, importers will not be certain of their final duty liability." Appx1507 (BYD Cmts.); Appx5093 (CSI Cmts.). In court, all evidence before the CIT showed 35,000 entries that had invoked the Duty Suspension Rule for duty-free treatment and remained ***un***liquidated. The CIT's liquidation order simply concludes an otherwise unfinished duty assessment process and, as this Court has reasoned, "would be prospective, not retroactive action." *Canadian Wheat Bd. v. United States*, 641 F.3d 1344, 1350 (Fed. Cir. 2011).

Plaintiffs explained the harm caused by failing to assess AD/CVD duties on CSPV Product entries found to be circumventing the PRC AD/CVD Orders. Appx5306, Appx5345-Appx5346 (Pls. R.56.1 Br.); Appx3659-Appx3654, Appx3657-Appx3663 (Compl.). The trial record confirmed that CBP had not liquidated **<u>any entry</u>** it found to qualify for Duty Suspension; meanwhile, 35,000 entries invoking the Rule remained unliquidated. Appx4824 (Tr.). Intervenors did not challenge these facts during or after oral argument. *See* Appx4859, Appx4902-

Appx4903 (Tr.). In a footnote, Intervenors belatedly contest this. *See* Br. at 70 n.17. However, "arguments raised in footnotes are not preserved." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

Moreover, Intervenors' supposedly contrary examples consist of: (1) counsel's statement that an importer ***may*** challenge CBP's finding that a liquidated entry did not comply with the *Duty Suspension Rule*, *see* Appx4902-4903 (Tr.), which at most confirms continued duty uncertainty for those entries; and (2) declarations dated ***after the CIT's judgment*** asserting that a [ amount ] of [ object ] have [ status ], Appx4956 (emphasis supplied); *see* Appx4960 ([ amount ]). One other declarant made similar assertions. Appx4980 (Intervenor Decl.). No declarant denied that any [ object ] were found to be [ status ]. *See* Appx4949-4971 (Intervenor Decl.).

Intervenors' belated submissions otherwise confirm that Plaintiffs face ongoing harm. Sworn statements of two [ entity ] attest that [ action ] with [ object ] would [ type of impact ], and impact [ type of impact

]. Appx4973-4974; Appx4983-4984 (Intervenor Decl.).[10] These corroborate Auxin's experience, *see* Appx3657-Appx3663 (Compl.), and belie Intervenors' assertion that "any competitive impact of the Final Rule's duty waiver for those imports had passed," Br. at 58. Should Plaintiffs prevail, fair pricing will be instilled into the marketplace.

As the CIT recognized, this Court has held that "price erosion" and "loss of business opportunities" are irreparable injury. Appx104 (Op.) (quoting *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012)). Auxin proffered uncontroverted evidence of such harms, *e.g.*, Appx3649-Appx3663 (Compl.), on which the CIT relied, *see* Appx103-Appx104 (Op.); *see also CSPV Products from Cambodia, Malaysia, Thailand, and Vietnam*, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (June 2025) at 78 n.388 (finding *Duty Suspension Rule* "entries likely had some adverse impact on the domestic industry"). Intervenors question how this relates to

---

[10] Given Fed. Cir. R.25.1(d)(1)(A)'s bracketing limitations, the summary contained herein is brief. Plaintiffs respectfully encourage review of the complete [ entity ] declarations.

"future harm that the CIT's injunction would prevent," Br. at 58, but past price erosion and lost business opportunities have long been recognized as indicating future irreparable harm, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310 (Fed. Cir. 2007) (crediting "evidence of price erosion as well as lost opportunities to sell other services to the lost customers" to support irreparable harm); *Oman Fasteners*, 125 F.4th at 1089 ("damage to customer relationships resulting from its inability to sell {product} to current customers" is irreparable harm).

Moreover, as the CIT found, "domestic producer plaintiffs have a '***strong, continuing, commercial-competitive stake*** in assuring that…competing importers will not escape the monetary sanctions deliberately imposed by Congress." Appx102-Appx103 (Op.) (quoting *Zenith*, 710 F.2d at 810 (emphasis supplied)); *see also* Statement of Administrative Action, H.R. Doc. 103-316, Vol. 1, at 1137 (1994) ("U.S. dumping and countervailing duty laws will continue to be the most important and most effective U.S. response to unfair trade practices."). This is especially true here, where Auxin petitioned for the very

circumvention relief that the Duty Suspension denied. *See* Appx2594-Appx2690 (Anti-Circ. Pet.).

Ensuring AD/CVD duty assessment on *Duty Suspension Rule* entries would arrest the continuing harm of the competitive disadvantage to which the Rule continues to subject Auxin. Plaintiffs cannot turn back time and deny the cash flow boon that unlawful suspension of cash deposit requirements gave Intervenors, but the CIT's order ensures that, going forward, customer relationships and price competition are reset by the assessment of AD/CVD duties on those entries. "Without this corrective action," as Auxin explained and the CIT found, "Auxin ***will have to*** exit the CSPV module production business altogether." Appx3653-Appx3654 (Compl.) (emphasis supplied); Appx104 (Op.). The CIT did not abuse its discretion in finding liquidation and reliquidation necessary to redress irreparable harm caused by the absence of accountability for rampant circumvention.

### B. The CIT Did Not Clearly Err in Balancing Harms

Turning to the balance of harms, Intervenors first invoke their meritless challenges to Plaintiffs' irreparable harm to try to lighten the pro-Order side of the scale. *Compare* Br. at 61-64, *with id.* at 57-61.

Such arguments fail under this factor for the reasons explained in Section VI.A, *supra*. Intervenors then try to weight the anti-Order side of the scale by merely describing harms that the CIT already recognized in more detail and interposing supposed interests of non-parties and the non-appealing Government. *See id.* at 62-64. These arguments are meritless, and there was no clear error in the CIT's balancing analysis.

#### *1. The Question Presented Is Whether the CIT's Consideration of Intervenors' Harm Was Clearly Erroneous*

The balance of harms "'assesses the relative effect of granting or denying an injunction on ***the parties***.'" *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1371 (Fed. Cir. 2013) (case without intervenors) (quoting *i4i Ltd. P'ship v. Microsoft Corp.,* 598 F.3d 831, 862 (Fed. Cir. 2010) (same)) (emphasis supplied). However, "the effect on {third parties like} customers and patients…is irrelevant under this prong of the injunction test." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008). Thus, Intervenors' attempts to cloak themselves in the wider interests of the "U.S. solar industry," "other companies," or "the public" must be disregarded in considering whether the CIT clearly erred in balancing harms. *See* Br. at 62, 64.

The Government is not party to this appeal. Order, ECF 36 (Feb. 2, 2026). Intervenors nevertheless invoke the "whole point of the moratorium" to attack the CIT's balancing. Br. at 64. The *Duty Suspension Rule* was created to serve policy interests of *the Government*—not Intervenors. The Government **never** asserted (much less provided evidence of) harm to its policy interests, *see* Appx5401-Appx5405 (Def. Resp. Br.) (expressing procedural concerns); Appx4865-Appx4870 (Tr.) (same); Appx105 (Op.) (addressing same), and Intervenors "cannot enlarge the issues before the court," *Vandewater Int'l Inc. v. United States*, 130 F.4th 981, 995 (Fed. Cir. 2025); *see also PDS Consultants, Inc. v. United States*, 133 Fed. Cl. 810, 818 (2017) (omitting Government interests from balance-of-harms analysis where Government took no position).

Even if some harm to Government policy interests were found, "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008); *cf. also Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 714 F.3d 1289, 1294 (Fed. Cir. 2013) ("{A} party will not be permitted to argue before us an issue on which it has lost and on which it has not appealed, where

the result of acceptance of its argument would be reversal or modification of the judgment rather than affirmance.”). Thus, Intervenors’ appeal presents no occasion to contemplate harm to the non-appealing Government.

### 2. *The CIT Did Not Clearly Err in Assessing Nonexistent Evidence of Intervenors’ Financial Exposure*

Regarding Intervenors, the CIT straightforwardly acknowledged asserted “harms stemming from the ‘significant ***liability***’ that they would face if forced to pay antidumping and countervailing duties on merchandise” imported under the Rule. Appx106 (Op.). Intervenors identify no overlooked interest, instead inviting this Court to re-weigh the “extrem{ity}” of their “financial consequences” and the effects of their “reliance” vis-à-vis individual AD/CVD rates. *See* Br. at 61-65. This Court does not review the CIT’s balance of harms analysis *de novo*. *eBay*, 547 U.S. at 391 (abuse of discretion review).

Regardless, and dispositively, Intervenors’ expanded rendition of their asserted harms relies ***exclusively*** on evidence not presented until ***after*** judgment, some of which relates to non-parties. *See* Br. at 62 (citing Appx4948-4984 (Intervenor Decl.), filed Sept. 18, 2025). Because “the record on appeal is generally limited to that which was before the

{lower} court," *Moore U.S.A., Inc. v. Standard Reg. Co.*, 229 F.3d 1091, 1116 (Fed. Cir. 2000), there can be no "clear error" in relation to such untimely evidence. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009) ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the 'arbitrary and capricious' standard into effectively de novo review.'"). Relatedly, these untimely assertions are forfeited. *Int'l Rights Advocates v. Mullin*, 177 F.4th 1366, 1375 (Fed. Cir. 2026); *see also Oman Fasteners*, 125 F.4th at 1089-90 (applying exhaustion principles to balance-of-harms argument not raised before CIT). If countenanced, Intervenors' foregone expansions or "scaling back" are manifestly less "extreme" than the non-viability of Auxin's business, which Plaintiffs timely established during CIT proceedings. *Compare* Br. at 62, *with* Appx3653-Appx3654 (Compl.).

### *3. The CIT Did Not Clearly Err in Weighing Reliance Interests*

The CIT recognized that Intervenors had "imported in ***reliance*** on the Duty Suspension Rule," but found their "finality interests are far weaker than if reliquidation were the primary remedy." Appx106 (Op.) (emphasis supplied). Intervenors reference "reliance on the U.S.

Government's assurances" that their entries "would be duty-free," but cite no specific source. Br. at 63-64. Intervenors already received the cash flow benefit of the *Duty Suspension Rule*'s waiver of "cash deposits" during entry. *See* 19 C.F.R. 361.103(b)(1). As for "duties" assessed at liquidation, the Rule merely provides that "{i}n the event" Commerce found circumvention "and thereafter…issues liquidation instructions to CBP, {Commerce} will direct CBP to liquidate Applicable Entries without regard to" AD/CVD duties. *Id.* at 362.103(c). Intervenors received the promised instructions, Appx1448-1485 (Final CBP Instr.), expressly limited to entries satisfying the Rule's conditions, 19 C.F.R. 361.102, 362.103(c).

However, as Intervenors recognized in commenting on the proposed rule, final duty assessment remained uncertain until liquidation, Appx1507 (BYD Cmts.); Appx5093 (CSI Cmts.), and Commerce confirmed that liquidation itself would not be expedited, Appx326 (Rule). Consistent with this, 19 C.F.R. 362.103(c), CBP extended liquidation of Duty Suspension entries to review compliance, Appx4824-Appx4825 (Tr.), which involved notice to the importer, 19 U.S.C. § 1504(b). Such developments should have led a reasonable

importer to question the durability of duty-free treatment for unliquidated entries. All evidence before the CIT demonstrated that all entries potentially qualifying for the Duty Suspension Rule remained unliquidated and would remain so until April 2026. Appx4823 (Tr.); 19 U.S.C. § 1504(b). As for the minority of liquidated entries, CBP found none complied with the Rule. Appx4823 (Tr.). "Reliance" does not weight in Intervenors' favor when they failed to ***comply*** with the Rule.

The threat of litigation and the Government's early stipulation to reliquidation authority, *see* Appx4807-Appx4811 (Joint Stip.), undermine the reasonableness of reliance claims. Intervenors regularly invoke the calendar, *e.g.*, Br. at 73, but the mere passage of time does not render unliquidated entries more "final" or "reliable." Moreover, from the moment the *Duty Suspension Rule* was first proposed, multiple parties challenged it, *see, e.g.*, Appx243-Appx308 (Auxin Cmts.), and Auxin decried its illegality throughout circumvention proceedings, *e.g.*, Appx448-Appx482 (Auxin Pre-Prelim. Cmts.); Appx661-Appx765 (Auxin Admin. Br.); Br. at 18-25 (conceding examples). Commerce—not Plaintiffs—delayed circumvention proceedings 209 days ***after*** the regulatory deadline, *compare* 19 C.F.R.

351.226(e)(2) ("shall, to the maximum extent practicable, issue" by January 26, 2023), *with* Appx1433 (August 23, 2023, publication), but as the CIT recognized Plaintiffs filed four months after the affirmative final circumvention determination, Appx106-Appx107 (Op.). The CIT considered the interplay between this and Intervenors' harm and did not clearly err in finding no "delay {sufficient} to shift the balance in favor of defendants and defendant-intervenors." *Id.*; *see also* Appx4845-Appx4849 (Tr.) (considerable attention during oral argument).

#### *4. Intervenors Knowingly Accepted a Tradeoff and Otherwise "Harmed" Themselves by Inaction*

"Equity will not assist {one} whose condition is attributable only to that want of diligence which may be fairly expected from a reasonable person." *Upton v. Tribilcock*, 91 U.S. 45, 55 (1875). Intervenors' "harm" is self-inflicted insofar as it is caused by Intervenors' failure to comply with the *Duty Suspension Rule* or their decisions to forego available AD/CVD administrative review procedures. By not finding that such harms tip the balance toward Intervenors, the CIT did not clearly err. *See Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("the court did not clearly err in finding that Apotex's harms were 'almost entirely preventable' and were the result

of its own calculated risk to launch its product pre-judgment."); *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected.").

*First*, Intervenors' large-scale failures to comply with the *Duty Suspension Rule's* meagre requirements are not due to this case or the CIT's order. Months before judgment, CBP found that 23,600 entries failed to satisfy the *Duty Suspension Rule*'s requirements. Appx4823 (Tr.). Importers ***may*** contest these determinations, Appx4902-4903 (Tr.), but barring evidence of compliance, of which the CIT was presented none before Judgment, AD/CVD assessment on these entries is entirely a consequence of the importer's failure to comply with a Rule they voluntarily applied to their entries. A contracting party "should not be heard to argue that the enforcement of the contract into which it freely entered would cause hardship." *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1009 (Fed. Cir. 2022).

*Second*, as for the remaining entries, Intervenors incorrectly suggest that the *Duty Suspension Rule* precluded them from pursuing

individual AD/CVD rates. *See* Br. at 63-64, 67-68. They offer no evidence that sales made under the Rule—and thus free from AD/CVD discipline—were dumped at ***lower*** rates. *See id.* Nevertheless, Intervenors assert that AD/CVD liability "long after" administrative review procedures "ha{ve} passed" is unfair. *Id.* at 63. As the CIT recognized, however, this is not Plaintiffs' doing. Commerce designed the tradeoffs in the *Duty Suspension Rule*, *e.g.*, Appx4882 (Tr.), Intervenors ***supported*** the Rule's structure, Appx5140 (NEE Cmts.); Appx5160-Appx5161 (SEIA Cmts.), and use of the Rule was entirely voluntary, on an entry-by-entry basis, *see* Appx1448-Appx1485 (Final CBP Instr.).

Intervenors should also be estopped from complaining about the consequences of non-suspended liquidation. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). To justify intervention, certain Intervenors claimed that suspension of liquidation contrary to the *Duty Suspension Rule* "threatens direct impacts," Appx5091-Appx5092 (CSI), and they "would suffer irreparable harm," Appx5118-Appx5119 (JA Solar), "would be harmed," Appx5169 (Invenergy), and "would be adversely affected," Appx5065-Appx5066 (BYD). The CIT cited Intervenors'

reliance on the Rule to find such adverse effects. Appx67-Appx68 (Op.). Thereafter, despite 35,000 entries remaining unliquidated deep into CIT proceedings, Appx4824 (Tr.), no Intervenor ***ever*** moved to suspend liquidation, even in part, to facilitate supposedly critical AD/CVD administrative reviews. *See* Appx113-Appx154 (Docket).

Indeed, Intervenors' own conduct demonstrates that the *Duty Suspension Rule* presented no actual barrier to obtaining individual rates. Thus far, Commerce considered at least three Intervenors during every administrative review at issue and calculated rates for seven Intervenor companies, including at least one during each implicated review. *See* Addendum. Using these procedures merely required Intervenors to subject a single entry to the PRC AD/CVD Orders and suspension of liquidation in lieu of the *Duty Suspension Rule*. This could be done at the time of entry; after entry but before liquidation through a post-summary correction, *e.g.*, Appx1437 (Final Circ. Dets.) (instructing importers to use this procedure); or after liquidation through a protest, 19 U.S.C. § 1514(a); 19 C.F.R. 174.11(b). Once a separate AD or CVD rate is obtained, an importer can continue using that rate until it is altered. *See* 19 C.F.R. 351.107(d)-(e).

Further supporting estoppel, BYD, CSI, and Trina leveraged their *Duty Suspension Rule* entries to successfully argue that the U.S. International Trade Commission should treat Cambodian and Thai CSPV Product imports as negligible and thus subject to a heightened standard in separate AD/CVD injury investigations that were ongoing during these CIT proceedings. CSPV Products from Cambodia, Malaysia, Thailand, and Vietnam, Inv. Nos. 701-TA-722–725 and 731-TA-1690–1693 (Final), USITC Pub. 5631 (June 2025) at 38-48.

Intervenors emphasize the total amount at issue, *see* Br. at 64, but that cuts both ways. The China-wide rates have been identical at all relevant times. If Intervenors view them as "draconian," *id.* at 63, then at minimum prudence dictates use of the readily available mitigation procedures. Failure to do so was a "calculated risk" by some Intervenors, *Sanofi-Synthelabo*, 470 F.3d at 1383, not a clear error by the CIT.

### C. The CIT's Consideration of Public Interest Was Not Clearly Erroneous

The CIT found that "'public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly,'" and that this factor favored

Plaintiffs because the *Duty Suspension Rule* had "overridden" "compliance with the trade laws." Appx108 (Op.) (quoting *American Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010)). As with the balance of harms, Intervenors' public interest arguments rely on cherry-picked Government policy interests that were absent from the parties' public interest arguments before the CIT. *Compare* Br. at 65-67, *with* Appx5403-Appx5405 (Def. Resp. Br.); Appx5446-Appx5452 (Int. Resp. Br.); Appx4901-Appx4903 (Tr.). Intervenors cite no authority for requiring the CIT to "consider the extensive factual record" *sua sponte*. *See* Br. at 65. Even *Winter*'s public interest discussion refers to supporting affidavits from "several top Navy officers." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 28 (2008); *id.* at 37 (Breyer, J., concurring) ("the Navy has filed multiple affidavits from Navy Officials explaining in detail the seriousness of the harm…").

Specifically, Intervenors co-opt various assertions from Proclamation 10414 and the *Duty Suspension Rule*, then claim the CIT "overrode the President's {public interest} determination." Br. at 65-66. But neither Plaintiffs' case nor the CIT's judgment concerns the President's emergency declaration. Moreover, that a "President believes

certain policies should be adopted" does not mean "that he is to be a lawmaker." *Youngstown*, 343 U.S. at 587-588 (affirming district court injunction). Nor are Commerce's policy interests as one-sided as Intervenors suggest. Commerce previously characterized, "Congressional intent behind the AD/CVD laws" as "to remedy the injurious effects of unfairly traded imports," *Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 Fed. Reg. 52,300 52,303 (Sept. 20, 2021), thereby "level{ing} the playing field for particular American manufacturers," *Guangdong Wireking Housewares & Hardware Co. v. United States*, 745 F.3d 1194, 1206 (Fed. Cir. 2014). As the CIT recognized, "uniform{} and fair{}" application of these laws serves the public interest. Appx107-Appx108 (Op.). Logically, moreover, the Government's abandonment of the Rule and voluntary dismissal of its appeal demonstrates a lack of perceived risk to any public interest derived from government policy. *Cf. Swift & Staley Inc. v. United States*, 159 Fed. Cl. 731, 735-736 (2022) (noting government's "willingness to maintain the status quo" and finding that favors the public interest).

Intervenors also assert that "the CIT's decision imposing retroactive liability undermines Section 1318(a) as a tool." Br. at 67. This contravenes *Oman Fasteners*, which "h{e}ld that the Trade Court correctly ruled that the 154.33% {AFA} rate could not stand, and it was therefore in the public interest to enjoin enforcement of that rate," 125 F.4th at 1088, much like the CIT in this case, *see* Appx107-Appx108 (Op.). *Oman Fasteners* expressed no concern that enjoining an unlawful AFA rate would constrain AFA's usefulness. *See id.* at 1085, 1088. By contrast, allowing the Duty Suspension Rule's unlawful override of critical AD/CVD protections to go uncorrected would undermine domestic producers' willingness to invest the significant time and expense needed to obtain those protections. This, too, is reflected in the CIT's reasoning, *see* Appx102, Appx107-Appx108 (Op.), which contains no clear error.

## VII. Ordering Reliquidation Is Within the CIT's Power

Intervenors challenge the lawfulness of enjoining CBP to reliquidate to increase duty liability. Br. at 68-74. Their argument is irrelevant to unliquidated entries, which comprise the vast majority at issue; mooted by the Government's stipulation to reliquidation

authority; and otherwise legally erroneous. Relatedly, Intervenors mistakenly contend the CIT "erroneous{ly} belie{ved} that no entries had been liquidated." *Id.* at 73.

### A. The CIT Accurately Stated Entries' Liquidation Status

The CIT quoted accurately and at length from Government counsel's testimony concerning liquidation status. Appx99-Appx100 (Op.). Later, the CIT cross-referenced that testimony, stating that "no applicable entries have been liquidated thus far." Appx106 (Op.). As an "applicable entry" means one qualified to use the *Duty Suspension Rule*, 19 C.F.R. 362.102, the CIT's phrasing comports with Government counsel's testimony that no entry had "properly liquidated without AD or CVD duties, consistent with the {Rule}," Appx99 (Op.). Put differently, the CIT correctly recognized that, although some entries ***invoking*** the Rule had liquidated, no liquidated entries had ***actually qualified*** for duty-free treatment, in CBP's view.

As Section VI.B.4 explained, Intervenors' systemic non-compliance with *Duty Suspension Rule* requirements means that even if the Rule were valid, CBP is nevertheless "demanding payment of {AD/CVD} duties pursuant to 1592(d)," Appx4823 (Tr.), which allows CBP to

pursue duties unpaid due to fraud, gross negligence, or negligence "{n}otwithstanding {the liquidation statute}," 19 U.S.C. §§ 1592(a), (d). Whatever defense Intervenors may (or may not) present, *see* Appx4902-4903 (Tr.), ***all*** entries known to be "liquidated" at time of judgment were subject to a 1592(d) payment demand for failure to comply with the Rule.

Notably, given CBP's independent 1592(d) challenge to the finality of liquidation for these entries, Intervenors avoid characterizing the CIT's order as ***causing*** duty assessment. Br. at 73. However, their describing the risk of duty payment as "unexpected" is not remotely credible. *Id.* at 70; *see also* 19 U.S.C. § 1592(b) (notice requirements).

Even if some unidentified entries had liquidated, the Government stipulated to the CIT's reliquidation power, Appx4807-Appx4811 (Joint Stip.); Appx99 (Op.), and of course only the Government is competent to effectuate reliquidation, *e.g.*, 19 U.S.C. § 1501. As Government counsel summarized, "{the stipulation} was really just taking a…potentially disputed legal issue off the table." Appx4900 (Tr.). Indeed, as the CIT noted, "the government ***requested***" that reliquidation authority be included if liquidation were ordered. Appx100 (quoting Appx4899 (Tr.))

(emphasis supplied). *Sumecht* considered a like scenario, holding that a similar "represent{ation}" estopped the Government from contesting the CIT's reliquidation authority. *Sumecht NA, Inc. v. United States*, 923 F.3d 1340 (Fed. Cir. 2019).

Intervenors note the stipulation was filed before they moved to intervene. Br. at 73-74. This did not prevent Intervenors from commenting in opposition. Appx5286-Appx5289 (Intervenor Cmts.). Regardless, Intervenors' late arrival cannot undermine the stipulation's validity as "an intervenor is admitted to the proceeding as it stands," *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944), and "cannot enlarge the issues before the court," *Vandewater*, 130 F.4th at 995. The CIT entered the reliquidation stipulation. Appx99 (Op.).

**B. The CIT Has Power to Order Reliquidation**

Intervenors identify various customs statutes concerning liquidation's finality. *See* Br. at 69-70. From these, Intervenors extrapolate Congressional intent to deny power to order duty-increasing liquidation, noting also that *Shinyei* concerned a duty refund request. *See id.* at 70-73 (citing *Shinyei*, 355 F.3d at 1309). Intervenors otherwise incorrectly assert that this case, unlike *Shinyei*, did not

involve "erroneous instructions to CBP." *Id.* at 72. In fact, Commerce's erroneous CBP instructions invoking the *Duty Suspension Rule* are squarely at issue. *See* Section III.A, *supra*.

Moreover, as the CIT has explained in rejecting similar arguments based on the same authorities, the Administrative Procedure Act, under which this case was brought, Appx2568 (Compl.), "generally waives the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority,'" unless "{an}other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *AM/NS Calvert LLC v. United States*, 654 F. Supp. 3d 1324, 1342 (Ct. Int'l Trade 2023) (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) and 5 U.S.C. § 702).

> *Patchak's* logic necessarily means that in all cases properly brought under this court's residual jurisdiction, equitable relief, including an injunction requiring reliquidation, is available under the CIT's "broad remedial powers." *Shinyei*, 355 F.3d at 1312. That's because when a plaintiff properly invokes the CIT's § 1581(i) jurisdiction, no other statute can be "addressed to the type of grievance" for which the plaintiff seeks relief. *Patchak*, 567 U.S. at 216.

*Id.* at 1343. Thus, the CIT has power to order reliquidation.

## VIII. Any Remand Must Account for Plaintiffs' Unresolved Claims

Intervenors identify no basis to disturb the CIT's Judgment. Were remand nevertheless ordered, it must preserve Plaintiffs' unresolved challenges to the *Duty Suspension Rule*, which the CIT declined to reach on mootness grounds. Appx96-Appx99 (Op.).

## IX. Conclusion

For the foregoing reasons, Plaintiffs ask this Court to dismiss Intervenors' appeal for lack of standing and otherwise affirm the CIT's opinions and judgment in all challenged respects.

* * *

Respectfully submitted,

/s/ Thomas M. Beline
Thomas M. Beline
James E. Ransdell
Roop K. Bhatti
Chase J. Dunn
CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Ave N.W., Suite 300
Washington, DC 20037
Phone: (202) 567-2300
Fax: (202) 567-2301

*Counsel to Auxin Solar Inc. and Concept Clean Energy, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-2120

**Short Case Caption:** Auxin Solar Inc. v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 17460* words.

☐ the filing has been prepared using a monospaced typeface and includes ___________ lines of text.

☐ the filing contains ___________ pages / ___________ words / ___________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ___________).

Date: 08/04/2026

Signature: /s/Thomas M. Beline

Name: Thomas M. Beline

*For the avoidance of doubt, this number includes the words appearing in the table on page "19-2."

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2025-2120

**Short Case Caption:** Auxin Solar Inc. v. US

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 15 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 08/04/2026

Signature: /s/Thomas M. Beline

Name: Thomas M. Beline

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2025-2120

**Short Case Caption** Auxin Solar Inc. v. US

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 08/14/2026

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☐ Other: ________________

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Jonathan T. Stoel | jonathan.stoel@hoganlovells.com |
| Matthew R. Nicely | mnicely@akingump.com |
| Craig A. Lewis | craig.lewis@hoganlovells.com |
| Jonathan M. Freed | jfreed@tradepacificlaw.com |
| Amanda Shafer Berman | aberman@crowell.com |

☑ Additional pages attached.

Date: 08/14/2026

Signature: /s/Thomas M. Beline

Name: Thomas M. Beline

Additional Pages to Form 30

| Person Served | Service Location |
|---|---|
| Jeffrey S. Grimson | jsg@mowrygrimson.com |
| C. Kevin Marshall | ckmarshall@jonesday.com |
| Gregory S. Menegaz | gmenegaz@igtlaw.com |
| Ned H. Marshak | nmarshak@gdlsk.com |